# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-18-00740-CV

---

**Appellant, Gerard Matzen//Cross-Appellants, Marsha McLane, in Her Official Capacity as Director of Texas Civil Commitment Office, and The Texas Civil Commitment Office**

**v.**

**Appellees, Marsha McLane, in Her Official Capacity as Director of Texas Civil Commitment Office, and The Texas Civil Commitment Office// Cross-Appellee, Gerard Matzen**

---

**FROM THE 261ST DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-17-004319, THE HONORABLE JAN SOIFER, JUDGE PRESIDING**

---

# O P I N I O N

Gerard Matzen appeals the portion of a district court's order granting in part Appellees' plea to the jurisdiction in the underlying cause involving his civil commitment under the sexually violent predator (SVP) statute. *See* Tex. Health & Safety Code §§ 841.001-.153. The Texas Civil Commitment Office (TCCO) and its Director Marsha McLane filed a cross-appeal as to the portion of the order denying in part their plea. In five issues, Matzen contends that: the district court erred by ruling on Appellees' plea to the jurisdiction after he filed his third amended petition; sovereign immunity did not bar his Administrative Procedure Act (APA), *see* Tex. Gov't Code §§ 2001.001-.903, ultra vires, and statutory- and constitutional-violation claims; and McLane was not entitled to qualified immunity.

On cross-appeal, Appellees challenge the denial of their plea as to Matzen's procedural due process and takings claims. We will affirm the district court's order.

## BACKGROUND

Matzen's complaints arise in the context of the 2015 legislative changes to the SVP Act in chapter 841 of the Health and Safety Code, which we address briefly. *See id.* The SVP Act sets forth the civil-commitment procedure providing long-term supervision and treatment for SVPs who have behavioral abnormalities that are not amenable to traditional mental-health treatment and that increase the SVPs' likelihood of recidivism. *See id.*; *Stevenson v. State*, 499 S.W.3d 842, 844 (Tex. Crim. App. 2016); *Texas Civil Commitment Office v. Hartshorn*, 550 S.W.3d 319, 321 (Tex. App.—Austin 2018, no pet.). The SVP Act establishes a framework for the civil-commitment process, encompassing a person's initial assessment as an SVP, trial, commitment, biennial review of the person's commitment, any modifications to the person's housing or supervision during commitment, and any petitions to the court for the person's release. *Hartshorn*, 550 S.W.3d at 321; *see* Tex. Health & Safety Code §§ 841.001-.153. A person civilly committed under the SVP Act must reside at a particular location, remain in Texas unless given permission to leave, be fitted with satellite-monitoring equipment, and comply with "a host of restrictions on his activities." *In re Commitment of Fisher*, 164 S.W.3d 637, 648 (Tex. 2005); *Hartshorn*, 550 S.W.3d at 329.

**Statutory changes to SVP program in 2015**

The Legislature amended several aspects of the SVP Act in 2015. *See* Act of May 21, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Gen. Laws 2701, 2701-12 (codified at Tex. Health & Safety Code §§ 841.001-.153). These amendments included renaming the former "Office of

Violent Sex Offender Management" as the "Texas Civil Commitment Office" and establishing that TCCO would be governed by a five-member board. Tex. Gov't Code § 420A.002(b). Further, the Legislature replaced the "outpatient treatment and supervision" model with a tiered-treatment program providing for both inpatient and outpatient treatment. Tex. Health & Safety Code § 841.0831; *see In re State*, 556 S.W.3d 821, 823-24 (Tex. 2018) (summarizing amendments to SVP Act). The Legislature directed TCCO to develop the tiered program for the supervision and treatment of a committed person, providing "for the seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on the person's behavior and progress in treatment." Tex. Health & Safety Code § 841.0831.

As part of the tiered program, TCCO is to designate an intake and orientation facility for committed persons on their release from a secure correctional facility. *Id*. § 841.0832(b). The Legislature tasked TCCO with operating or contracting with a vendor to operate one or more facilities for housing committed persons. *Id*. § 841.0832(a). The Legislature also allowed a person to progress to less-restrictive housing and supervision if a court "determines that the transfer is in the best interests of the person and conditions can be imposed that adequately protect the community." *Id*. § 841.0834; *see In re State*, 556 S.W.3d at 824 (noting that amended SVP Act "enumerates a procedure for a committed person's movement between program tiers, both from more restrictive to less restrictive and vice versa"); *see also Richards v. Taylor*, No. H-13-1394, 2015 U.S. Dist. LEXIS 121659, at *7 n.20 (S.D. Tex. Sept. 11, 2015) (noting that "the possibility of outpatient treatment is not forbidden by the amended SVP Act, but such treatment, if provided, would be simply one stage in a progressive treatment process").

Another amendment to the SVP Act requires a civilly committed person who is not indigent to make a monthly payment of an "amount that the office determines will be necessary" to defray the costs of providing the person's housing and treatment. Tex. Health & Safety Code § 841.084. That payment was added to the existing statutory requirement that a civilly committed person contribute to the cost of a tracking service. *Id*. § 841.084(a)(1)(B). TCCO adopted a rule implementing these statutory requirements of payment to defray costs for housing, treatment, and a tracking service. 37 Tex. Admin. Code § 810.273 (2018) (Tex. Civil Commitment Office, Cost of Housing, Treatment, and Tracking Service). TCCO also adopted rules defining "income" and "indigent." *Id*. § 810.122(5), (6) (2019) (Tex. Civil Commitment Office, Definitions).

Finally, the 2015 amendments to the SVP Act provided a procedure for modifying any previously imposed civil-commitment requirements that differed from the 2015 amendments to conform to the legislative changes. *See* 2015 Tex. Gen. Laws 2701, 2711-12 ("If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section."); *In re State*, 556 S.W.3d at 824; *Hartshorn*, 550 S.W.3d at 326.

**Matzen's suit**

Matzen was adjudicated an SVP and civilly committed in 2014. The last biennial review referenced in this record determined that Matzen's "behavioral abnormality, which causes him to engage in predatory acts of sexual violence, was still present." In 2015, the district court

4

that civilly committed Matzen signed an order conforming his civil commitment to the most recent legislative changes and placing Matzen in the tiered-treatment program pursuant to section 841.0831 of the Texas Health and Safety Code. The same day, the court signed an amended order of civil commitment for Matzen that, among other things, ordered him to comply with all requirements and rules imposed by TCCO.

Matzen resides at the Texas Civil Commitment Center (TCCC). It is operated by Correct Care Recovery Solutions (Correct Care) under a contract with TCCO. Matzen sued Appellees, challenging the validity of various agency rules because they were adopted by TCCO's board rather than TCCO itself and alleging that a portion of Matzen's work-program income had been "misappropriat[ed]" as restitution to the State. Matzen pled claims under the APA and the Texas Debt Collection Practices Act. He also pled violations of the prohibitions against creation of a "debtor's prison," unlawful search and seizure of his financial information, and taking of private property—his work-program pay—without due process. Matzen sought damages and injunctive and mandamus relief for his claims. He later amended his petition to request several declarations under the Uniform Declaratory Judgments Act (UDJA). *See* Tex. Civ. Prac. & Rem. Code §§ 37.001-.011.

In response, Appellees filed a plea to the jurisdiction. Matzen then filed a second amended petition, adding allegations that McLane committed ultra vires acts by administering the rules that TCCO's board promulgated—rather than rules being adopted by McLane herself— and that she and Correct Care violated his peaceable-assembly and free-speech rights by "denying [him] the right to meet with the media." Matzen followed that filing with his "Opposition" to the plea. Appellees then filed a plea to the jurisdiction responsive to Matzen's second amended petition and attached evidence, including a sample of the cost-recovery

5

worksheet for calculation of the amount payable to TCCO that was blank. Matzen responded with his "Opposition" to that plea and then a "Corrected Opposition," also attaching evidence supporting the allegations set forth in his petition and his completed cost-recovery worksheet dated May 4, 2018.[1]

The district court heard argument on Appellees' plea responsive to Matzen's second amended petition. While the plea was under advisement, Matzen filed a third amended petition alleging that he is a third-party beneficiary of the contract between TCCO and Correct Care and that Correct Care breached the contract to his detriment. The district court granted Appellees' plea in part and dismissed Matzen's APA, ultra vires, Debt Collection Practices Act, "debtor's prison," and unlawful-search-and-seizure claims. However, the district court denied the plea in part as to Matzen's procedural due process and takings claims.[2] Matzen's appeal and Appellees' cross-appeal followed.

## DISCUSSION

**Standard of review**

A plea to the jurisdiction challenges the court's authority to decide a case. *Heckman v. Williamson Cty.*, 369 S.W.3d 137, 150 (Tex. 2012) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000)). The burden is on the plaintiff to affirmatively demonstrate the trial court's jurisdiction. *Id*. (citing *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004)). Because subject-matter jurisdiction is a question of law, we

---

[1] Appellees filed a motion to strike certain exhibits that Matzen attached to his "Corrected Opposition," but no ruling on the motion appears in the record.

[2] Matzen's claims against Correct Care remain pending in district court. Correct Care is not a party to this appeal.

6

review de novo a trial court's ruling on a plea to the jurisdiction. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). In assessing a plea to the jurisdiction, we begin by considering the plaintiff's live pleadings and determine whether the facts alleged affirmatively demonstrate that jurisdiction exists. *Heckman*, 369 S.W.3d at 150 (citing *Miranda*, 133 S.W.3d at 226). Mere unsupported legal conclusions do not suffice. *Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 737-38 (Tex. App.—Austin 2014, pet. dism'd); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting analogous principle in federal courts as to dismissal of constitutional complaints for failure to state claim: "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). When a plea to the jurisdiction challenges the existence of jurisdictional facts, we may also consider evidence submitted to the trial court, and we must do so when necessary to resolve the jurisdictional issues raised. *Miranda*, 133 S.W.3d at 227; *Bland*, 34 S.W.3d at 555. "[T]he jurisdictional inquiry may unavoidably implicate the underlying substantive merits of the case when, as often happens in *ultra vires* claims, the jurisdictional inquiry and the merits inquiry are intertwined." *Chambers—Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019) (citing *Miranda*, 133 S.W.3d at 228) (italics in original).

If the plaintiff's pleadings lack sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency, and the plaintiff should be afforded an opportunity to amend. *Miranda*, 133 S.W.3d at 226-27. But if the plaintiff's pleadings affirmatively negate the existence of jurisdiction—for instance, by seeking to recover monetary damages from a state agency and a state official under circumstances in which immunity has not been waived—the trial court may grant a plea to the jurisdiction without allowing the plaintiff an opportunity to

7

amend. *See id*.; *Milton v. Texas State Dental Bd. of Exam'rs*, No. 03-14-00346-CV, 2014 Tex. App. LEXIS 13825, at *4 (Tex. App.—Austin Dec. 30, 2014, no pet.) (mem. op.).

## I. Matzen's appeal

**First issue:  Ruling on plea after Matzen filed third amended petition**

In his first issue, Matzen contends that the district court erred by ruling on Appellees' plea to the jurisdiction after he filed his third amended petition.  Matzen states that his third amended petition supplanted his second amended petition, that "the second amended petition was no longer part of the record" when the district court ruled, and that granting a plea to the jurisdiction addressed to the second amended petition was error.

When a party files an amended pleading after a hearing has been held on the plea but before the trial court's ruling, and the court's order reflects that it reviewed the parties' pleadings, the amended pleadings are considered the live pleadings before the trial court when it ruled on the plea.  *City of McKinney v. Hank's Rest. Grp.*, 412 S.W.3d 102, 110 (Tex. App.—Dallas 2013, no pet.); *see also Church v. City of Alvin*, No. 01-13-00865-CV, 2015 Tex. App. LEXIS 10114, at *11 (Tex. App.—Houston [1st Dist.] Sept. 29, 2015, no pet.) (mem. op.).  Here, the district court's order on the plea to the jurisdiction states that it considered the parties' pleadings and that the district court declined to rule on claims pled in Matzen's second amended petition but omitted from his third amended petition.  Thus, the third amended petition was Matzen's live pleading before the district court when it ruled.  *See Hank's Rest. Grp.*, 412 S.W.3d at 110; *Church*, 2015 Tex. App. LEXIS 10114, at *11.

Matzen's third amended petition included claims against TCCO and McLane that overlapped those in his second amended petition. His live pleading also made allegations—such as the Board's lack of rulemaking authority, McLane's exclusive rulemaking authority, McLane's ministerial duties, and the preclusive effect of his original commitment order—addressed by the plea to the jurisdiction pending before the district court. It was proper for the district court to consider whether Matzen's pleadings affirmatively demonstrated the court's lack of jurisdiction, as Appellees' plea contended, regardless of whether Appellees amended or supplemented their plea in response to Matzen's most recently amended petition. *See Gulf Coast Waste Disposal Auth. v. Four Seasons Equip., Inc.*, 321 S.W.3d 168, 172, 177-78 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (reversing order denying defendant's plea to jurisdiction, although defendant did not amend or supplement its plea to address breach-of-contract claim alleging waiver-by-conduct and third-party-beneficiary theories in plaintiff's supplemental petition, because plaintiff sought damages in excess of trial court's jurisdictional limit); *see also Milton*, 2014 Tex. App. LEXIS 13825, at *3-4 ("[Plaintiff]'s pleadings affirmatively negate the existence of jurisdiction by seeking to recover monetary damages from a state agency and a state official under circumstances in which immunity has not been waived. Thus, the trial court could properly grant a plea to the jurisdiction on that claim without allowing [plaintiff] an opportunity to amend.").

On this record, Matzen has not shown that the district court erred by ruling on Appellees' plea to the jurisdiction after he filed his third amended petition. Accordingly, we overrule Matzen's first issue.

9

**Second issue:  Matzen's APA claims**

In his second issue, Matzen contends that his APA claims are not barred by sovereign immunity.  He alleges that "all proclamations found in Title 37 Texas Administrative Code Chapter 810"—the rules addressing SVP civil commitment—"are invalid because they were adopted and/or amended by the Board," "an entity with no rulemaking authority."  *See generally* 37 Tex. Admin. Code §§ 810.121-.283 (2017) (Tex. Civil Commitment Office, Civil Commitment).  Matzen further alleges that McLane was responsible for promulgating TCCO's rules.  Matzen's APA cause of action is set forth in his second and third amended petitions in nearly identical terms, except that his third amended petition requested declarations as to the invalidity of the rules based on their enactment by the governing Board.

The Legislature provided that TCCO is "governed by a board composed of five members appointed by the governor," serving staggered six-year terms.  Tex. Gov't Code § 420A.002(b)-(c).  The Legislature was aware that TCCO—like its predecessor agency, the Office of Violent Sex Offender Management—functions through its governing board.  *See* Act of May 19, 2011, 84th Leg., R.S., ch. 1201, § 19(b), 2011 Tex. Gen. Laws 3197, 3204 (requiring that transfer of "all functions relating to the sex offender civil commitment program" to TCCO's predecessor agency occur after all members of its governing board had qualified for office); *see also Dallas Cty. Flood Control Dist. No. 1 v. Cross*, 815 S.W.2d 271, 278 (Tex. App.—Dallas 1991, writ denied) (noting governing board's involvement in policy decisions "[l]ike any governing body of a public agency"); 1 Ronald L. Beal, Texas Administrative Practice and Procedure § 8.3.2[a], at 8-27 (2019) (noting that "[a]n agency board is charged with the ultimate responsibility of enforcing its legislative mandate").  Among the governing board's functions for TCCO is the adoption of rules consistent with the purposes of chapter 841 of the Health and

Safety Code concerning the civil commitment of SVPs. *See* Tex. Health & Safety Code § 841.141(a) ("The office by rule shall administer this chapter. Rules adopted by the office under this section must be consistent with the purposes of this chapter.").

Because TCCO functions through its governing board and because Matzen's APA cause of action is based on an incorrect theory that the administrative rules in Chapter 810 of the Texas Administrative Code were invalid because TCCO's board enacted them, we overrule his second issue.

**Third issue: Matzen's ultra vires claims**

In his third issue, Matzen contends that his ultra vires claims against McLane were not barred by sovereign immunity. He reiterates his contention that TCCO's board lacked authority to promulgate rules for the agency. Matzen contends specifically that McLane acted outside the scope of her legal authority by:

(1) adopting a rule that defines indigence for the purpose of collecting "cost recovery fees";

(2) extorting "cost recovery fees" from [Matzen], who had been declared indigent for purposes of Chapter 841;

(3) extorting "cost recovery fees" from [Matzen] in violation of the Judgment ordering [him] into Chapter 841 commitment;

(4) extorting "cost recovery fees" from [Matzen] in violation of the Constitutional prohibition on retroactive laws;

(5) extorting "cost recovery fees" from [Matzen] without his having been ordered to pay such fees after a "civil commitment proceeding";

(6) extorting "cost recovery fees" of 33% of income from each and every resident of TCCC without individual assessment of their ability to pay;

11

(7)   extorting "cost recovery fees" from [Matzen] in violation of Texas Gov't Code Chapter 2107;

(8)   extorting "cost recovery fees" from [Matzen] in violation of Texas Finance Code Section 392.301;

(9)   compelling [Matzen] to participate in inpatient treatment;

(10)   denying [Matzen] his Constitutional right to freedom of speech;

(11)   denying [Matzen] his Constitutional right to peaceably assemble with persons other than his victims;

(12)   administering Chapter 841 with policies and procedures, adopted, discarded and/or changed as McLane and TCCO deem convenient; and

(13)   granting Correct Care the authority to punish [Matzen] for violation of Correct Care rules.

Ultra vires acts—i.e., acts taken without authority—are not considered acts of the state. *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017). "[A] government officer with some discretion to interpret and apply a law may nonetheless act 'without legal authority,' and thus ultra vires, if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Id*. (quoting *Houston Belt*, 487 S.W.3d at 158). An ultra vires claim requires a plaintiff to "allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." *Id*. (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)). "If the plaintiff alleges only facts demonstrating acts within the officer's legal authority and discretion, the claim seeks to control state action, and is barred by sovereign immunity." *LMV-AL Ventures, LLC v. Texas Dep't of Aging & Disability Servs*., 520 S.W.3d 113, 126 (Tex. App.—Austin 2017, pet. denied).

Ministerial acts are those "where the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment." *Hall*, 508 S.W.3d at 238 (quoting *Southwestern Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015)). Discretionary acts, by contrast, require the exercise of judgment and personal deliberation. *Emmett*, 459 S.W.3d at 587.

As examined below, all of the allegations Matzen pled as ultra vires claims were either within McLane's discretionary authority, authorized by statutes or administrative rules, or have no application in this context. In such circumstances, there is no waiver of sovereign immunity and the district court properly granted the plea without affording Matzen further opportunity to amend. *See Miranda*, 133 S.W.3d at 226-27; *Milton*, 2014 Tex. App. LEXIS 13825, at *4 (noting that because claimant sought to recover monetary damages from state agency and state official under circumstances in which their immunity had not been waived, trial court could grant plea to jurisdiction without allowing claimant opportunity to amend).

### 1. Cost-recovery-rule allegations

Matzen's allegations numbered 1 through 6 and 12 are complaints about administrative rules defining indigence and implementing the cost-recovery statute that requires monthly payments defraying the costs of a civilly committed person's housing, treatment, and tracking service.

### a. TCCO board's adoption of cost-recovery rules

Because the governing board adopted the rules instead of McLane, Matzen pled that McLane failed to administer the SVP Act in chapter 841 by rule, *see* Tex. Health & Safety Code § 841.141(a) (conferring on TCCO power to administer by rule statutes in chapter 841 of

13

Health and Safety Code concerning civil commitment of SVPs), thereby rendering her actions ultra vires. We have already rejected Matzen's theory that the rules in Chapter 810 of the Texas Administrative Code were not "validly adopted" because TCCO's board enacted them. Matzen cites no authority showing that McLane herself had a ministerial duty to adopt rules by a specified deadline on any particular subject. *See Hall*, 508 S.W.3d at 238 (noting that ministerial duties are those that law requires to be performed "with such precision and certainty as to leave nothing to the exercise of discretion or judgment").

### b. Obligation to defray costs of housing, treatment, and tracking service

Further, as to the authorization for the cost-recovery rules that TCCO's board adopted, we have noted that the SVP Act requires a civilly committed person who is not indigent to make a monthly payment of an "amount that the office determines will be necessary" to defray the costs of providing the person's housing, treatment, and tracking service. Tex. Health & Safety Code § 841.084. Matzen contends that the judgment adjudicating him an SVP imposes on the State the obligation to pay for his treatment and supervision. But as the SVP Act clarifies, the provisions of section 841.084 requiring a civilly committed person to defray the costs of providing the person's housing, treatment, and tracking service apply "notwithstanding" another part of the Act reciting that the State pays reasonable costs of a person's treatment and supervision. *See id*. §§ 841.084(a) ("Notwithstanding Section 841.146(c) [providing that State shall pay reasonable costs of person's treatment and supervision], a civilly committed person who is not indigent: (1) is responsible for the cost of: (A) housing and treatment provided under this chapter; (B) the tracking service required by Section 841.082; and (C) repairs to or replacement of the tracking equipment required by Section 841.082, if the person intentionally

14

caused the damage to or loss of the equipment, as determined by the office; and (2) shall pay to the office: (A) a monthly amount that the office determines will be necessary to defray the cost of providing the housing, treatment, and service with respect to the person; and (B) as directed by the office, any amount for which the person is responsible under Subdivision (1)(C)."), 841.146(c). Because section 841.084 of the SVP Act imposes an obligation to defray the costs of providing a committed person's housing, treatment, and tracking service, Matzen's contention that the State was required to pay for those costs is incorrect and is not a proper basis for an ultra vires claim against McLane.

### c. Indigency status and order to pay cost-recovery fees

In allegation 6, Matzen cites no authority, and we have found none, supporting his contention that his indigency status when he was civilly committed under the SVP Act in 2014 permanently established his future indigency. *Cf.* Tex. R. App. P. 20.1(b)(3) (recognizing that party's financial circumstances on appeal may have materially changed for purposes of determining party's status as indigent); *McFatridge v. State*, 309 S.W.3d 1, 6 (Tex. Crim. App. 2010) (noting that indigency determinations are made on case-by-case basis when issue is raised and that "[a] defendant can be found indigent for one purpose without being found indigent for the other"). As TCCO notes, Matzen was found not indigent for appeal of his civil commitment. *See In re Commitment of Matzen*, No. 09-14-00115-CV, 2014 Tex. App. LEXIS 11438, at *1 (Tex. App.—Beaumont Oct. 16, 2014, no pet.) (mem. op.) (noting that trial court sustained contest to Matzen's affidavit of indigence after he disclosed that he had $15,000 in his inmate trust fund).

15

Relatedly, Matzen complains that McLane is obtaining cost-recovery fees from him without his having been ordered to pay such fees after a "civil commitment proceeding." But the record reflects that the district court issued an amended order conforming Matzen's civil commitment to the most recent legislative changes, necessarily including the contribution toward cost-recovery fees, as required by the SVP Act. Transition provisions in section 40(b) of the session law for the 2015 amendments to the SVP Act specify that the court with jurisdiction over the committed person must modify any previously imposed civil-commitment requirements that differ from the 2015 amendments to conform to the changes. 2015 Tex. Gen. Laws at 2711-12 ("If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section."). As we have noted, in 2015 the district court that civilly committed Matzen signed an amended order of civil commitment ordering Matzen's compliance with all requirements and rules imposed by TCCO.

Matzen also complains that the cost-recovery fees were imposed without individual assessment of ability to pay. However, Matzen's pleadings show that there is such an assessment because he alleged that he provides his financial information to TCCO, and that TCCO uses that information to determine whether he—or any other resident of the Texas Civil Commitment Center—is indigent. Matzen has not shown that his ability-to-pay complaints support his ultra vires claim.

16

### d. Retroactive laws

Matzen also alleges that McLane has acted outside the scope of her legal authority by obtaining cost-recovery fees from him in violation of the constitutional prohibition against retroactive laws. Similar contentions about the retroactive effect of amendments to the SVP Act have been considered and rejected. *See, e.g.*, *In re Commitment of May*, 500 S.W.3d 515, 524-26 (Tex. App.—Beaumont 2016, pet. denied) (rejecting contention that civil-commitment judgment ordering outpatient treatment gave May vested right to outpatient treatment and noting that when May was civilly committed as SVP, "settled expectations included having the treating agency determine where May would reside and the sex offender treatment he would receive"); *In re Commitment of Cortez*, 405 S.W.3d 929, 931, 935-36 (Tex. App.—Beaumont 2013, no pet.) (concluding that person civilly committed as SVP could be ordered to reside at approved treatment facility notwithstanding allowance of "outpatient" sex-offender treatment in his original judgment of commitment).

Further, the SVP Act provides that civil-commitment requirements may be modified by the committing court—as done here to conform with the requirements of the 2015 amendments—at any time after notice to each affected party to the proceedings and a hearing. Tex. Health & Safety Code § 841.082(e); *see In re Wilson*, No. 09-16-00243-CV, 2016 Tex. App. LEXIS 10400, at *8-10 (Tex. App.—Beaumont Sept. 22, 2016, orig. proceeding) (rejecting contention that amended order applying changes to SVP statute retroactively to SVP's case violated prohibitions on ex post facto and retroactive laws). Matzen's retroactivity allegations do not support his ultra vires claim.

### e. Unreasonable search and seizure

Another of Matzen's cost-recovery complaints is that McLane has enforced an invalid rule requiring him to reveal his "financial and/or banking records" without a court order in violation of the prohibitions against unreasonable searches and seizures in the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution. Matzen further complains that TCCO failed to enact "valid rules" authorizing him to reveal his banking or financial information. We have rejected Matzen's theory that the rules in Chapter 810 of the Texas Administrative Code were not "validly adopted" because TCCO's board enacted them.

Moreover, Matzen's pleadings acknowledge that he provides financial information to TCCO. Matzen completes a monthly form listing the amounts and sources of his income, and that information is used to determine his contribution toward his housing, treatment, and tracking service in compliance with the SVP Act. *See* Tex. Health & Safety Code § 841.084; *cf. Goodwin v. State*, 416 S.W.3d 90, 95-96 (Tex. App.—Beaumont 2013, no pet.) (rejecting unreasonable search and seizure claim and noting that "[a]s a sexually violent predator subject to a commitment order, Goodwin does not have an expectation of privacy equal to an individual in society generally"). Matzen's pleadings do not support his allegations of an unconstitutional search or seizure and are not a proper basis for his ultra vires claim.

For the reasons discussed in this subsection, we conclude that Matzen has not pled a valid ultra vires claim against McLane based on his allegations about the cost-recovery rules. *See Hall*, 508 S.W.3d at 238.

## 2. Texas Government Code Chapter 2107 allegations

Matzen's allegation number 7 contends generally that McLane obtained cost-recovery fees from him in violation of chapter 2107 of the Texas Government Code. His pleadings allege that she did not comply with a ministerial duty to enact rules under this statute.

Chapter 2107 addresses the Texas Attorney General's adoption of "uniform guidelines for the process by which a state agency collects delinquent obligations owed to the agency," an agency's establishment of rules conforming to the Attorney General's guidelines, and referral to the Attorney General of uncollected and delinquent obligations. *See* Tex. Gov't Code §§ 2107.002-.003(a); *State v. Buchanan*, 572 S.W.3d 746, 748 (Tex. App.—Austin 2019, no pet.) (addressing attorney's fees under chapter 2107 for Attorney General's collection of delinquent sales-and-use taxes). Chapter 2107 also provides that "[u]ntil a state agency adopts rules under this section, the attorney general by rule may establish collection procedures for the agency, including the period for collecting a delinquent obligation." Tex. Gov't Code § 2107.003(c). The statute sets no deadline for the agency's adoption of rules conforming to the Attorney General's guidelines. *See generally id*. §§ 2107.001-.008.

Assuming Chapter 2107 were to apply to uncollected and delinquent costs for an SVP's housing, treatment, and tracking service, the statute specifies that if the agency has not yet adopted rules, the Attorney General may do so for the agency. *See id.* § 2107.003(c). Thus, McLane would not have violated Chapter 2107 if she had not enacted rules under this statute. Because Matzen has not shown that Chapter 2107 of the Texas Government Code required McLane to perform certain duties "with such precision and certainty as to leave nothing to the exercise of discretion or judgment," we cannot conclude that Matzen pled a valid ultra vires claim based on this statute. *See Hall*, 508 S.W.3d at 238.

19

### 3. Debt Collection Practices Act allegations

Matzen's allegation number 8 contends that McLane obtained cost-recovery fees from him in violation of section 392.301 of the Texas Finance Code, the Debt Collection Practices Act. However, that statute does not apply here because Matzen is not a "consumer" and because the costs he is responsible for paying are not "consumer debt."

A "consumer" is defined in the Debt Collection Practices Act as "an individual who has a consumer debt," and "consumer debt" is defined as "an obligation, or an alleged obligation, primarily for personal, family, or household purposes and arising from a transaction or alleged transaction." Tex. Fin. Code § 392.001(1)-(2). "To be a consumer, the claimant must have sought or acquired goods or services by purchase or lease, and those goods or services must form the basis of the complaint." *Burton v. Prince*, 577 S.W.3d 280, 291 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Green v. Port of Call Homeowners Ass'n*, No. 03-18-00264-CV, 2018 Tex. App. LEXIS 6937, at *35 (Tex. App.—Austin Aug. 29, 2018, no pet.) (mem. op.) (concluding that "DCPA does not apply to debts that are not 'consumer debts'"). Matzen is responsible for defraying the costs of his housing, treatment, and tracking service because of his SVP civil commitment, not because of any consumer transaction as defined in the Debt Collection Practices Act. Thus, the Debt Collection Practices Act in section 392.301 of the Finance Code is not a proper basis for pleading an ultra vires claim against McLane.[3]

---

[3] The introduction to Matzen's brief states that the district court erred by dismissing the claims pled under 28 U.S.C. 2007 and Article I, section 18 of the Texas Constitution (Matzen's "debtor's prison" claims). However, Matzen waived this issue by wholly omitting any briefing of it. *See* Tex. R. App. P. 38.1(i) (requiring briefs to contain clear and concise argument for contentions made, with appropriate citations to authorities and record).

### 4. Inpatient-treatment allegations

Matzen's allegation number 9 contends generally that McLane has acted outside the scope of her legal authority by compelling him to participate in inpatient treatment. He also complains that he is not provided "appropriate and necessary treatment" and "coordinated treatment." But Matzen has not shown that McLane's provision of "appropriate and necessary treatment" or "coordinated treatment" involve duties that the law requires her to perform "with such precision and certainty as to leave nothing to the exercise of [her] discretion or judgment" and as to provide a basis for pleading a viable ultra vires claim. *See Hall*, 508 S.W.3d at 238.

Moreover, with regard to his inpatient-treatment complaint, Matzen's amended civil-commitment order requires him to reside where instructed by TCCO and to comply with all of TCCO's requirements and rules. Consistent with his amended order, Matzen's 2014 civil-commitment order—which was incorporated into the judgment adjudicating him as an SVP—required him to live where instructed by TCCO and to comply with treatment provided by TCCO. Matzen's judgment requires his treatment to be conducted in accordance with both the judgment and the civil-commitment order.

As part of his civil commitment, Matzen is subject to biennial reviews. *See* Tex. Health & Safety Code § 841.102. One function of a biennial review is to consider whether to modify a requirement imposed on the person under the SVP Act. *In re State*, 556 S.W.3d at 826 (citing Tex. Health & Safety Code § 841.102(c)(1)). When the district court ordered Matzen's placement in the tiered-treatment program, it noted that as of the last biennial review, Matzen's "behavioral abnormality, which causes him to engage in predatory acts of sexual violence, was still present." The district court determined that Matzen's behavior and progress in treatment would benefit from placement in the tiered-treatment program.

21

As we have noted, the Legislature tasked TCCO with operating or contracting with a vendor for the operation of one or more housing facilities for committed persons. *See* Tex. Health & Safety Code § 841.0832(a). Matzen resides and receives treatment at a facility operated by TCCO's contractor, Correct Care. Matzen has not shown that McLane lacks discretion to require that he receive treatment there. *See Hall*, 508 S.W.3d at 238; *see also In re Commitment of May*, 500 S.W.3d at 524-26 (rejecting contention that civil-commitment judgment ordering outpatient treatment gave May vested right to outpatient treatment and noting that when May was civilly committed as SVP, "settled expectations included having the treating agency"—here, TCCO—"determine where May would reside and the sex offender treatment he would receive"); *In re Commitment of Cortez*, 405 S.W.3d at 935-36 (concluding that person civilly committed as SVP could be ordered to reside at treatment facility approved by TCCO's predecessor agency notwithstanding his original judgment of commitment allowing "outpatient" sex-offender treatment). Thus, Matzen's inpatient-treatment complaint is not a proper basis for pleading an ultra vires claim against McLane.

### 5. Freedom-of-speech and peaceable-assembly allegations

Matzen's allegations 10 and 11 contend that McLane has acted outside the scope of her legal authority by denying his constitutional rights to freedom of speech and to peaceably assemble. Matzen's pleadings link these free-speech and peaceable-assembly claims to "the right to meet with the media," but he provides no factual support for them. As to these claims, his petition states only that

> under the United States Constitution, [Matzen] has the rights to peaceably assemble and free speech. [Matzen] asserts that Defendant McLane, and her agent CCRS, are denying [Matzen]'s rights to peaceably assemble and free speech

22

by denying [him] the right to meet with the media. [Matzen] requests the Court to declare that by denying [him] the right to meet with the media, Defendant McLane and her agent CCRS are violating [his] rights to free speech and assembly and thereby acting outside the scope of Defendant McLane's lawful authority.

Matzen's brief asserts summarily that "[v]iolation of an individual's Constitutional rights is by definition outside the scope of a State official's lawful authority." But without contextual facts that assertion does not support his ultra vires allegations against McLane. *See Balquinta*, 429 S.W.3d at 737-38 (noting that claimant must allege facts affirmatively demonstrating trial court's jurisdiction to hear cause and that mere unsupported legal conclusions do not suffice); *see also Matzen v. McLane*, 764 F. App'x 402, 403 (5th Cir. 2019) (rejecting Matzen's similar contention that "McLane violated his First Amendment right to associate by not allowing him to contact any person without first obtaining permission.").[4]

We conclude that despite his multiple amended pleadings, Matzen's freedom-of-speech and peaceable-assembly claims contain no factual allegations supporting an ultra vires claim against McLane and that the district court did not err by dismissing these ultra vires claims. *See Harris Cty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) ("If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the

---

[4] Further, to the extent that media access implicates issues of security and monitoring, certain restrictions may comply with the Legislature's instruction to TCCO to "develop procedures for the security and monitoring of committed persons in each programming tier." Tex. Health & Safety Code § 841.0833; *see Matzen v. McLane*, 764 F. App'x 402, 403 (5th Cir. 2019) (concluding that Matzen failed to show that McLane's alleged restrictions on his constitutional right of association lacked reasonable relationship with state's interests of rehabilitation and security); *see also Bohannan v. Doe*, 527 F. App'x 283, 294 (5th Cir. 2013) ("While courts of appeals have been reluctant to articulate a specific standard applicable to civilly committed individuals, it nevertheless seems that restrictions [on their First Amendment rights] are permissible so long as they advance the state's interest in security, order, and rehabilitation.").

jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action.").

### 6. Correct Care authorization allegations

Matzen's allegation number 13 contends that McLane has acted outside the scope of her legal authority by granting Correct Care the authority to punish him for violating its rules.[5] Matzen contends that the judgment adjudicating him an SVP and his commitment orders do not expressly authorize Appellees or Correct Care to punish him, whether in a disciplinary procedure with due process or otherwise. He specifically contends that McLane has no authority, and cannot authorize Correct Care, to punish residents of the Texas Civil Commitment Center where he lives.

However, TCCO is responsible for performing "appropriate functions" related to the sex-offender civil-commitment program, including functions related to the provision of treatment and supervision to civilly committed sex offenders. Tex. Gov't Code § 420A.010. TCCO is authorized to contract with a vendor like Correct Care to operate facilities for civilly committed persons. Tex. Health & Safety Code § 841.0832. The Legislature tasked TCCO with "develop[ing] procedures for the security and monitoring of committed persons in each programming tier." *Id*. § 841.0833. Under certain circumstances, security concerns at a civil-commitment center may require a properly trained "employee of the office [TCCO], or a person who contracts with the office or an employee of that person" to use mechanical or chemical restraints on a committed person residing in a civil-commitment center. *Id*. § 841.0838. We are

---

[5] Depending on the severity of the rule violations, the possible sanctions include criminal charges, monetary restitution, community service, recommendation for tier-level review, unit restriction, wing restriction, and loss of privileges for up to ninety days per infraction.

24

not persuaded that McLane lacks legal authority, or cannot authorize Correct Care, to impose consequences for rule violations on residents of the Texas Civil Commitment Center if that authority is not expressly stated in an SVP adjudication or in a commitment order. We conclude that Matzen's Correct Care authorization complaint was not a proper basis for pleading an ultra vires claim against McLane.

For all the reasons discussed, the ultra vires allegations that Matzen pled against McLane fail. We overrule Matzen's third issue.

**Fourth issue: Matzen's takings and procedural-due-process claims**

In his fourth issue, Matzen contends that the district court erred when it "dismissed" his claims that Appellees "are violating the constitutional prohibitions against the taking of property and/or liberty found in Texas Constitution Article 1, sections 17 and 19 and the 5th Amendment to the U.S. Constitution." But the district court ***denied*** the plea to the jurisdiction as to these "constitutional claims against TCCO and McLane pertaining to [Matzen's] Work Program Pay." The retention of these takings and procedural due process claims is the basis for Appellees' cross-appeal here. Because this issue complains about the "dismissal" of claims that the district court did not order dismissed, we overrule Matzen's fourth issue.

**Fifth issue: McLane's entitlement to qualified immunity**

In his fifth issue, Matzen contends that McLane was not entitled to qualified immunity as to his claims alleging that she was: (1) not performing discretionary activity; (2) acting outside the scope of her authority; and (3) acting in bad faith. Appellees respond that

because Matzen has sued McLane only in her official capacity—and not her individual capacity—qualified immunity does not apply here.

"Suits against a government employee in his or her official capacity are just another way of pleading a suit against the government entity of which the official is an agent." *Bexar Cty. v. Giroux-Daniel*, 956 S.W.2d 692, 695 (Tex. App.—San Antonio 1997, no writ); *Univ. of Tex. Health Sci. Ctr. v. Bailey*, 332 S.W.3d 395, 401 (Tex. 2011) ("A suit against a state official is merely another way of pleading an action against the entity of which [the official] is an agent."); *see Texas A&M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 843 (Tex. 2007) (noting that official sued in his individual capacity would assert official immunity as defense to personal monetary liability but that official sued in his official capacity would assert sovereign immunity); *Hill v. Trinci*, No. 14-10-00862-CV, 2012 Tex. App. LEXIS 5934, at *8 (Tex. App.—Houston [14th Dist.] July 24, 2012, no pet.) (mem. op.) (noting that official immunity is also referred to as qualified immunity). Qualified immunity is not at issue when a government employee is sued only in employee's official capacity. *Giroux-Daniel*, 956 S.W.2d at 695 (citing *Simpson v. Hines*, 903 F.2d 400, 404 (5th Cir. 1990) (noting that because police chief was sued in official capacity only, qualified immunity was not at issue)).

We agree with Appellees that qualified immunity is inapplicable to Matzen's suit against McLane in her official capacity as Director of TCCO. Accordingly, we overrule Matzen's fifth issue. We proceed to consider Appellees' cross-appeal.

## II. Appellees' cross-appeal

In their cross-appeal, Appellees challenge the denial of their plea as to Matzen's procedural due process and takings claims involving his work-program pay. Appellees contend

that Matzen has not stated a viable constitutional claim involving his work-program pay and that these claims, in addition to the others, should have been dismissed.

In his pleading, Matzen states that his takings claim is brought "VERSUS AL[L] DEFENDANTS," that TCCO and McLane failed to follow proper legal procedures, and that Correct Care unconstitutionally misappropriated his work program pay "without affording [him] procedural due process and/or due course of law pursuant to both United States and Texas Constitutions." Matzen requests reimbursement of "the amount that he was unjustly and illegally coerced to pay" and that "TCCO be enjoined from further misappropriation of [his] property as part of TCCO's efforts to recover the cost of expenses incurred for monitoring GPS tracking, housing and/or treatment." In support of these claims, Matzen alleged the following facts:

During the month of January 2016 [Matzen] was verbally advised by his case manager that he would have to begin paying 33% of his military retirement check monthly to TCCO because the law required him to pay for his GPS monitoring, housing and treatment. On or about January 13, 2016 [Matzen] was advised by the Clinical Director of the TCCC and the Assistant Deputy Director of TCCO that all residents of his dormitory at the TCCC that [sic], each month, they would have to pay 33% of their income to TCCO to cover the cost of their GPS monitoring, housing and treatment. During this same assembly, [Matzen] and the other residents of his dormitory were informed that failure to pay the prescribed 33% would subject the residents to loss of privileges and/or electronic devices and that they would not advance in tier or go home.

On February 23, 2016 [Matzen]'s commissary request was denied because it was determined that [he] owed the monthly fees for the time period September 2015 through December 2015 in the amount of $1135.48. The next day [Matzen] was called into his case manager's office to attempt an on-line payment from [Matzen]'s bank. During the incident all of [Matzen]'s confidential banking information was stored on his case manager's computer. The attempted transfer failed because it was an electronic transfer.

On April 14, 2016 [Matzen] met with his new case manager in another attempt to make an online transfer from [Matzen]'s bank to secure payment of [Matzen]'s September-December 2015 GPS monitoring, housing, and treatment arrears.

27

> Using a different method of payment, [Matzen] and his case manager succeeded in transferring $1135.48 to TCCO.

Matzen also alleged that packages are subject to the cost-recovery process and that "if cash in the amount of 33⅓% of the value of the contents of a package and the cost of shipping does not accompany a package, Correct Care confiscates the package." Matzen's response to the plea attached exhibits, and Appellees filed a motion to strike some of those exhibits but did not obtain a ruling on that motion. Thus, the evidence Matzen attached in his response was before the district court when ruling on the plea.

Appellees contend that "Matzen's constitutional claims are not viable." Thus, the issue as Appellees have stated, is "whether a takings clause claim can ever exist under the facts Matzen alleges." Appellees acknowledge that Matzen's burden at this stage of the litigation is to plead a set of facts that, if true, would be a constitutional violation. For the reasons that follow, we conclude that Appellees are incorrect in their contention that a takings clause claim could never exist on these facts. *See Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 77 (Tex. 2015) (noting that claims need not be "viable on their merits" survive plea to jurisdiction).

**Cost-recovery statute and rule**

As we have noted, the cost-recovery statute in section 841.084 of the Texas Health and Safety Code requires a civilly committed person to "pay to the office a monthly amount that the office determines will be necessary to defray the cost of providing the housing, treatment, and service with respect to the person." Tex. Health & Safety Code

§ 841.084(a)(2)(A). TCCO Rule 810.273 implements that statute. When Matzen filed the underlying suit in 2017, Rule 810.273 provided:

> A civilly committed person who is not indigent is responsible for the cost of housing and treatment services under Chapter 841 of the Health and Safety Code and the cost of the tracking service required by Health and Safety Code § 841.082. The office shall create and administer a policy regarding cost recovery for services. The policy shall include the amount and method of payment for the cost recovery and shall not require payment in an amount that exceeds the actual cost of the services.

42 Tex. Reg. 485, 485 (2017), *amended by* 43 Tex. Reg. 1142, 1142 (2018) (codified as an amendment to 37 Tex. Admin. Code § 810.273 (2019) (Tex. Civil Commitment Office, Cost of Housing, Treatment, and Tracking Services). TCCO amended the rule in 2018 to reference its definitions of "indigent" and "income" and cap the contribution amount at 50% of a civilly committed person's income:

> A civilly committed person who is not indigent is responsible for the cost of housing and treatment services under Chapter 841 of the Health and Safety Code and the cost of the tracking service required by Health and Safety Code § 841.082 <u>as well as any intentional loss of or damage to the tracking monitor</u>. The office shall create and administer a policy regarding cost recovery for services <u>utilizing the definitions of indigent and income set forth in Rule § 810.122, Definitions</u>. The policy shall <u>set forth the</u> method of payment for the cost recovery and shall not require payment in an amount that exceeds <u>50% of the income of the committed person or</u> the actual cost of the services.

37 Tex. Admin. Code § 810.273 (2019) (new provisions underlined). Under both versions of the rule, TCCO is to "create and administer a policy regarding cost recovery for services," setting the amount and method of payment.

TCCO's policy calculates the cost-recovery payment amount at "one-third" (33⅓%) of a civilly committed person's monthly income. "Income" includes "money received

from employment, to include wages, salaries, tips and other taxable employee pay; disability benefits; net earnings from self-employment; funds received from the sale of property; funds received as an inheritance; interest or dividend income; retirement income; social security income; unemployment benefits; and gifts." *Id*. § 810.122(5). Per TCCO policy, packages with a total cash value, including shipping, that exceeds $50 are also subject to cost-recovery assessment. *See* Tex. Civ. Commitment Office, Policy & Procedure No. 3.38 (effective 10/9/2017).

### 1. Procedural-due-process claim

Appellees contend that Matzen received all the process that he was due during his civil commitment in 2014 and during his subsequent hearing in 2015 to conform his civil-commitment order to the statutory amendments. They contend that the district court's order subjects Matzen to the entire civil-commitment scheme without any entitlement to separate due process. They further contend that Rule 810.273 does not create the cost-recovery payment requirement but merely implements section 841.084 of the Health and Safety Code.

The due-course-of-law guarantee of the Texas Constitution provides that "No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Tex. Const. art. I, § 19. The Texas due-course-of-law clause is nearly identical to the federal due-process clause: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; . . ." U.S. Const. amend. XIV, § 1; *Mosley v. Texas Health & Human Servs. Comm'n*, No. 17-0345, 2019 Tex. LEXIS 427, at *28 (Tex. May 3, 2019) (citing *University of*

*Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995), and concluding that there is no "meaningful distinction" between Texas and federal due-process clauses). Thus, Texas courts "have traditionally followed contemporary federal due process interpretations of procedural due process issues." *Mosley*, 2019 Tex. LEXIS 427, at *28 (quoting *Than*, 901 S.W.2d at 929). "In procedural due process claims, deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*." *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original); *Lakey v. Taylor*, 435 S.W.3d 309, 317 (Tex. App.—Austin 2014, no pet.) ("Procedural due process mandates that any government action depriving a person of life, liberty, or property be implemented in a fair manner.").

We apply a two-part test to due-process claims: we determine whether the petitioner (1) has a liberty or property interest that is entitled to procedural due process protection and, (2) if so, what process is due. *Mosley*, 2019 Tex. LEXIS 427, at *28.

### a. Property interest

"Property interests protected by the procedural due process clause include, at the very least, ownership of . . . money." *Stotter v. University of Tex. at San Antonio*, 508 F.3d 812, 822 (5th Cir. 2007); *Fontenot v. City of Houston*, No. 4:12-CV-03503, 2013 U.S. Dist. LEXIS 133600, at *26-27 (S.D. Tex. 2013) ("The plaintiffs have a cognizable property interest in their money."); *cf. Mathews v. Eldridge*, 424 U.S. 319, 332-33 (1976) (noting that individual has protected property interest in continued receipt of social-security benefits); *Rosin v. Thaler*, 417 F. App'x 432, 434 (5th Cir. 2011) ("A prisoner has a protected property interest in the funds in his prison account."). Here, Matzen has alleged a vested property interest in the money in his

31

bank account; thus, his claims are unlike those in cases such as *Klumb v. Houston Municipal Employees Pension System* that were facially invalid because they alleged no vested property right. 458 S.W.3d 1, 15, 17 (Tex. 2015) (concluding that claimants had "no vested property right to the pension plan contributions and future retirement benefits at issue" and thus, that claimants' pleadings "conclusively negate[d] the existence of subject-matter jurisdiction over their constitutional claims").

Because the lack of a vested property right is dispositive of a takings claim, the constitutional analysis ends when no vested property right is alleged. *See id.* at 17; *see also Holt v. Texas Dep't of Ins.-Div. of Workers' Comp.*, No. 03-17-00758-CV, 2018 Tex. App. LEXIS 10555, at \*20, \*23 (Tex. App.—Austin Dec. 20, 2018, pet. denied) (mem. op.) (rejecting takings claim based on backdating of maximum-medical-improvement dates, allowed by administrative rule, that caused claimants' loss of temporary income benefits and noting that "for a takings claim to be viable, the plaintiff must establish that a vested property interest is at stake"). Further, the claimants in *Holt*—like Matzen—alleged an unconstitutional taking based on the very same action authorized by an agency rule. *See* 2018 Tex. App. LEXIS 10555, at \*16-22; *accord Butler v. Michigan State Disbursement Unit*, 738 N.W.2d 269, 271 (Mich. 2007) (claimant alleged unconstitutional taking based on agency's retention of accrued interest on child-support payments it processed, although retention of accrued interest was authorized by statute). Having determined that Matzen alleged a vested property interest in the money in his bank account, we proceed to evaluate the viability of his constitutional claim by considering what process he received.

### b. Process due

At a minimum, due process requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Mosley*, 2019 Tex. LEXIS 427, at *28; *see Hill v. Taylor*, No. H-13-1489, 2015 U.S. Dist. LEXIS 105407, at *7 (S.D. Tex. Aug. 11, 2015) (concluding that civilly committed SVP showed no procedural-due-process violation because courts had previously reviewed and rejected his request to be released from civil commitment pending his second civil-commitment trial); *Fontenot*, 2013 U.S. Dist. LEXIS 133600, at *27 (concluding that plaintiffs "ma[d]e out a cognizable due process claim" by alleging that defendants notified them that surcharge for traffic violations was due and informed them of penalty to be imposed for failing to pay surcharge but provided no hearing or other opportunity to contest that deprivation).

Here, it is undisputed that Matzen received a jury trial in 2014 before the trial court adjudicated him an SVP and that he had a hearing in 2015 in which the requirements of his civil commitment were conformed to the most recent legislative amendments. But neither version of Rule 810.273 concerning the cost-recovery policy was in effect when those proceedings were held. Moreover, section 841.084 of the Health and Safety Code—which authorizes cost-recovery payments from nonindigent civilly committed SVPs—does not address the broader policy provisions that Appellees implemented, including extending the cost-recovery process to all "income" and to packages exceeding $50 in value by contents and shipping costs.

Appellees complain that the facts set forth in Matzen's pleadings of his constitutional claims contain allegations, such as a conversation with a caseworker, that are "unsupported by the record." But when reviewing a plea to the jurisdiction, we determine whether the pleader has alleged sufficient facts to affirmatively demonstrate the court's

33

jurisdiction to hear the cause and ensure that the pleadings do not affirmatively negate the existence of jurisdiction. *Miranda*, 133 S.W.3d at 226-27; *see Patel*, 469 S.W.3d at 77 (rejecting requirement that claims be "viable on their merits" to survive plea to jurisdiction); *cf. Pfeil v. Freudenthal*, 281 F. App'x. 406, 410 (5th Cir. 2008) (reversing trial court's order that dismissed inmate's takings claim as "frivolous or for failure to state a claim upon which relief may be granted" and concluding that he alleged viable claim "for the taking of money from his inmate account without due process"); *Eubanks v. McCotter*, 802 F.2d 790, 793-94 (5th Cir. 1986) (reversing trial court's order that dismissed inmates' takings claims for want of jurisdiction because their claims were "minimally sufficient to require a decision on the merits"). Appellees' plea has not shown that Matzen's pleading of his procedural due-process claim fails either of those tests, such that his constitutional claim could not be viable.

### 2. Takings claim

Appellees also contend that the district court erred by not granting their plea as to Matzen's takings claim because "the takings clause simply does not apply to Matzen's situation." We note that the extent of Appellees' takings argument to the district court was in a footnote to their reply in support of the plea, contending that "Plaintiff's personal housing, treatment, and GPS monitoring are not 'public use,' that "the takings clause prohibits the taking of real property," and that "[h]ere, the Plaintiff is simply required to make monetary payments."

The Texas Constitution provides that: "[n]o person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person . . . ." Tex. Const. art. I, § 17. Similarly, the Takings Clause of the Fifth Amendment provides that "private property [shall not] be taken for public

use, without just compensation." U.S. Const. amend. V; *see Dolan v. City of Tigard*, 512 U.S. 374, 383 (1994) (noting that Takings Clause is applicable to states through Fourteenth Amendment). The Texas Supreme Court has concluded that the takings clauses in the Texas and federal constitutions are substantially similar. *City of Austin v. Travis Cty. Landfill Co.*, 73 S.W.3d 234, 238 (Tex. 2002).

Thus, determining the viability of Matzen's takings claim requires consideration of whether he has alleged a taking of his money for public use, without just compensation. *See* U.S. Const. amend. V; Tex. Const. art. I, § 17.

### a. Public use

Appellees note that Takings Clause cases generally relate to eminent-domain proceedings. *Friedman v. American Sur. Co.*, 151 S.W.2d 570, 577 (Tex. 1941). But other Takings Clause cases do not. *See Texas Workforce Comm'n v. Midfirst Bank*, 40 S.W.3d 690, 697 (Tex. App.—Austin 2001, pet. denied) ("[W]e will not limit takings-clause actions to situations involving eminent domain."). The Supreme Court's opinion in *Brown v. Legal Foundation*, 538 U.S. 216 (2003), involved an alleged Fifth Amendment violation based on the taking of money. We include *Brown* in our discussion of the just-compensation factor.

Additionally, Appellees contend that the money collected from the cost-recovery fees is not for "public use," but for services provided to an individual. However, the Supreme Court has noted that, "[q]uite simply, the government's pursuit of a public purpose will often benefit individual private parties." *Kelo v. City of New London*, 545 U.S. 469, 485 (2005); *see Housing Auth. of Dall. v. Higginbotham*, 143 S.W.2d 79, 84 (Tex. 1940) ("The mere fact that the advantage of the use inures to a particular individual or enterprise, or group thereof, will not

35

deprive it of its public character."); *see also KMS Retail Rowlett, LP v. City of Rowlett*, No. 17-0850, 2019 Tex. LEXIS 463, at *25 (Tex. May 17, 2019) (same).  The Supreme Court stated that its cases "[w]ithout exception" define the concept of public use or public purpose "broadly" and "in favor of affording legislatures broad latitude in determining what public needs justify the use of the takings power." *Kelo*, 545 U.S. at 480, 483.

A taking that is "rationally related to a conceivable public purpose" constitutes a "public use" under the Fifth Amendment. *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 241 (1984); *Harris Cty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 812 (Tex. 2016) (noting that "[e]xamples of a taking for a private use tend to be esoteric . . . because all that is required for the taking to be considered for public use is a rational relationship to some conceivable public purpose" and that "[v]ery few takings will fail to satisfy that standard" (quoting *Montgomery v. Carter Cty.*, 226 F.3d 758, 765-66 (6th Cir. 2000))).  Courts have determined that the taking of money to provide funding for legal services to the poor was a public use, *Brown*, 538 U.S. 216 at 232, as was a redevelopment project to eliminate blight, a problem that caused "added costs to the taxpayer," *City of Las Vegas Downtown Redev. Agency v. Pappas*, 76 P.3d 1, 6 & n.8, 11 (Nev. 2003).

Matzen's pleading about the cost-recovery fees alleged that TCCO is misappropriating his property as part of TCCO's efforts to recover the cost of expenses incurred for monitoring, GPS tracking, housing and treatment.  Those cost-recovery fees, by offsetting an amount that otherwise would be shouldered by the taxpayers, are "rationally related to a conceivable public purpose" and thus, constitute a "public use" for the purpose of Matzen's pleading of his takings claim.  *See Midkiff*, 467 U.S. at 241; *Brown*, 538 U.S. 216 at 232; *Kerr*, 499 S.W.3d at 812.

### b. Just compensation

The parties join issue as to whether the cost-recovery fees are taken "without just compensation." Appellees contend that Matzen is compensated because the cost-recovery money defrays the expenses of the housing, tracking service, and therapeutic treatment he receives.

However, Appellees do not cite, and we have not found, any Texas court opinion on whether a civilly committed SVP receives "just compensation"—in the form of his court-ordered housing, monitoring, and treatment—for the required payment of a portion of his money (including any wages, disability benefits, proceeds from the sale of property, inheritance funds, interest or dividends, retirement income, social-security income, unemployment benefits, and gifts). *Cf. Brown v. Taylor*, No. EP-13-CV-17-FM, 2014 U.S. Dist. LEXIS 200282, at *9-10, *16 (W.D. Tex. 2014) (declining to address civilly committed SVP's claim that he was deprived of his property interest in his entitlements such as his "Social Security Insurance" payments because such argument could have been raised in his prior lawsuit); *see also* 37 Tex. Admin. Code § 810.122(5) (defining "income"). Similarly, we have not found any Texas authority on the constitutionality of tying payment of cost-recovery amounts to the SVP's ability to "advance in tier" in his civil commitment under the SVP Act if his progress warrants it.

The Supreme Court has concluded that the question of "just compensation" is measured by what the property owner has lost. *Brown*, 538 U.S. at 235. Further, the amount of compensation due is calculated by the property owner's net pecuniary loss. *Id*. at 237. If the property owner's net pecuniary loss is zero, the compensation due is also zero. *Id*.; *see Butler*, 738 N.W.2d at 271 (rejecting contention that agency's retention of accrued interest on child-

support payments it processed was unconstitutional taking because "plaintiff's net loss was zero").

In *Brown*, the Court considered whether the transfer of interest income generated by clients' pooled funds under a state's IOLTA (interest on lawyer's trust accounts) program constituted a taking without just compensation. *Id*. at 220. The Court quoted from the circuit court's dissenting opinion, noting that

> [i]t may be that the difference between what a pooled fund earns, and what the individual clients . . . lose, adds up to enough to sustain a valuable IOLTA program while not depriving any of the clients . . . of just compensation for the takings. This is a practical question entirely undeveloped on this record.

*Id*. at 238.[6]

Our record has a similar factual deficiency. As we have noted, the cost-recovery worksheet for calculation of the amount payable to TCCO that Appellees attached in support of their plea was blank, while Matzen attached a completed cost-recovery worksheet in response to the plea. *See Miranda*, 133 S.W.3d at 227 (considering relevant evidence submitted by parties when necessary to resolve jurisdictional issue). Neither party's evidence shows whether Appellees' costs for Matzen's housing, monitoring, and treatment are so great, and Matzen's monthly contribution so small, that there is no net pecuniary loss and no compensation due. *See*

---

[6] Ultimately, the Court decided that further hearings were unnecessary because the state's IOLTA program rules directed lawyers "to deposit client funds in non-IOLTA accounts whenever those funds could generate earnings for the client." *Brown v. Legal Found*., 538 U.S. 216, 239 (2003). To the extent that lawyers or those acting for them deposited client funds into an IOLTA account when those funds could have generated net income, they violated the IOLTA rules. *Id*. The Court further determined that "any conceivable net loss" was a consequence of "incorrect private decisions rather than any state action." *Id*. When the rules of the state's IOLTA program were obeyed, the owner's pecuniary loss was zero. *Id*. at 240.

*Brown*, 538 U.S. at 237. Determining whether any compensation is due to Matzen for any net pecuniary loss resulting from the taking he has pled necessarily requires development of a proper factual record. *See Blue*, 34 S.W.3d 554 (noting that "the proper function of a dilatory plea does not authorize an inquiry so far into the substance of the claims presented that plaintiffs are required to put on their case simply to establish jurisdiction" and that "whether a determination of subject-matter jurisdiction can be made at a preliminary hearing or should await fuller development of the merits of the case must be left largely to the trial court's sound exercise of discretion"); *see also Miranda*, 133 S.W.3d at 227-28 (same). Without that information, a conclusion that Matzen's pleadings could never allege a viable takings claim is premature.

On this record, we disagree with Appellees' contentions that their plea to the jurisdiction should have been granted in full and that Matzen's constitutional due process and takings claims could never exist, are facially invalid, and are not viable. Matzen's pleading of those claims does not "affirmatively demonstrate incurable defects in jurisdiction," *see Miranda*, 133 S.W.3d at 226-27; and his pleading alleges more than "[m]ere unsupported legal conclusions," *see Balquinta*, 429 S.W.3d at 737-38. Accordingly, we overrule Appellees' cross-appellate issue.[7]

---

[7] We express no opinion on the merits of Matzen's claims.

**CONCLUSION**

We affirm the district court's order.

_____

Gisela D. Triana, Justice

Before Justices Goodwin, Baker, and Triana
  Concurring and Dissenting Opinion by Justice Goodwin

Affirmed

Filed:   March 6, 2020