Justice Lehrmann delivered the opinion of the Court.
*822 The overarching issue in this mandamus is whether the relator, designated a sexually violent predator and civilly committed pursuant to the Civil Commitment of Sexually Violent Predators Act, was entitled to appointed counsel in proceedings on the State's motion to amend his civil commitment order to conform to the Act's 2015 amendments. Among other things, the amended Act requires commitment to a tiered treatment program that includes the possibility of "total confinement," while the Act's previous version provided for outpatient treatment only. The trial court denied the relator's request for counsel and, after a hearing, entered an amended commitment order. The court of appeals granted mandamus relief to the relator, ordering the trial court to vacate its orders and appoint counsel to represent the relator in further proceedings on the State's motion. We hold that the court of appeals abused its discretion and conditionally grant the State's petition for writ of mandamus.
I. Legal and Factual Background
A. The Act and 2015 Amendments
Enacted in 1999 and codified in Texas Health and Safety Code chapter 841, the Civil Commitment of Sexually Violent Predators Act enumerates a "civil commitment procedure for the long-term supervision and treatment of sexually violent predators" (SVPs) upon completion of their criminal sentence. TEX. HEALTH & SAFETY CODE § 841.001.[1] The Act applies to individuals with a "behavioral abnormality that is not amenable to traditional mental illness treatment modalities and that makes the [individuals] likely to engage in repeated predatory acts of sexual violence." Id. The Texas Civil Commitment Office is the agency responsible for "providing appropriate and necessary treatment and supervision" and "developing and implementing a sex offender treatment program" for committed persons. Id. § 841.007.[2]
Broadly, the Act may be broken down in pertinent part as follows. Subchapter B provides a procedure for the Texas Department of Criminal Justice to refer a potential SVP to the state's attorney, who may file a petition under Subchapter C alleging SVP status. Id. §§ 841.021-.023, .041. Subchapter D governs the SVP trial, which the judge "shall" conduct (1) within 270 days after the date the petition is served on the person and (2) "not later than the person's sentence discharge date." Id. § 841.061(a). The judge (or jury, if demanded) "shall determine whether, beyond a reasonable doubt, the person is a sexually violent predator."Id. §§ 841.061(b), .062(a).[3]
*823 Subchapter E governs the civil commitment of a person adjudicated an SVP under Subchapter D, commencing with the judge's entry of an order "commit[ting] the person for treatment and supervision to be coordinated by the [O]ffice." Id. § 841.081(a). It also mandates that the judge impose several requirements "to ensure the person's compliance with treatment and supervision and to protect the community." Id. § 841.082(a). These include, among others, requirements that the person reside where instructed, participate in and comply with treatment provided by the Office, and submit to appropriate supervision, including tracking under certain circumstances. Id. § 841.082(a)(1), (3), (4).[4] The Office is then responsible for determining the conditions of supervision and treatment and for entering into contracts for the provision of any necessary supervised housing, medical and mental health services, and sex offender treatment. Id. § 841.083.
Subchapter F requires a biennial expert examination of a person committed under Subchapter E, accompanied by a judicial review of the person's status. Id. §§ 841.101, .102(a). The judge "shall set a hearing" if he or she determines at the biennial review that a requirement imposed on a committed person should be modified or that "probable cause exists to believe that the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence." Id. § 841.102(c). Finally, Subchapter G governs a committed person's petition for release from civil commitment, including the circumstances under which a judge must set a hearing on such a petition. See id. §§ 841.121-.124.[5]
The Act requires appointment of counsel to represent an indigent person subject to a civil commitment proceeding under chapter 841. Id. § 841.005. A "civil commitment proceeding" is statutorily defined as "a trial or hearing conducted under Subchapter D, F, or G." Id. § 841.002(3-a). Thus, the Act mandates the assistance of counsel, including appointed counsel for indigent persons, at three stages of the proceedings. First, when a petition alleging a person is an SVP is initially filed, the person is "[i]mmediately" entitled to counsel "at all stages of the [Subchapter D] proceeding." Id. § 841.144(a). Second, a committed person is entitled to counsel at each biennial review under Subchapter F. Id. § 841.102(b). Third, assistance of counsel is required at a hearing conducted on a person's petition for release from civil commitment under Subchapter G. Id. §§ 841.002(3-a), .005.
Before the 2015 amendments, the Act required the judge to commit a person determined to be an SVP for "outpatient treatment and supervision." Act of May 31, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4143, 4147, amended by Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 12, 2015 Tex. Gen. Laws 2701, 2706. This included requiring the person "to reside in a Texas residential facility under contract with the office or at another location or facility approved by the office." Act of May 24, 2005, 79th Leg., R.S., ch. 849, § 3, 2005 Tex. Gen. Laws 2890, 2891, amended by Act of May 26, 2011, 82d Leg., R.S., ch. 1201, § 8, 2011 Tex. Gen. Laws 3197, 3201. The Act also imposed severe criminal penalties for violations of treatment requirements and other conditions imposed in a commitment order. See *824 In re Commitment of Fisher , 164 S.W.3d 637, 652 (Tex. 2005) (noting that the "Texas SVP scheme is unique in that it provides for outpatient commitment and, perhaps consequently, imposes severe criminal penalties for violating a condition of confinement").
In 2015, the Legislature passed Senate Bill 746, which amended the Act to, among other things, replace the required "outpatient" treatment with the development of a "tiered" treatment program providing "for the seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on the person's behavior and progress in treatment." Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 16, 2015 Tex. Gen. Laws 2701, 2706 (codified at TEX. HEALTH & SAFETY CODE § 841.0831 ); see also id. § 12, 2015 Tex. Gen. Laws at 2704 (deleting the reference to "outpatient" treatment in section 841.081). The amended Act also enumerates a procedure for a committed person's movement between program tiers, both from more restrictive to less restrictive and vice versa. TEX. HEALTH & SAFETY CODE § 841.0834. Thus, while the Act's prior version contemplated significant limitations on an SVP's housing and movements, the amended Act goes further by authorizing "total confinement," at least in the more restrictive treatment tiers.[6] Along with the transition to a tiered treatment program, the amended Act removes the criminal penalties for noncompliance with treatment requirements and other obligations imposed by the Office. Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 19, 2015 Tex. Gen. Laws 2701, 2708 (codified at TEX. HEALTH & SAFETY CODE § 841.085(a) ); see Richards v. Taylor , No. H-13-1394, 2015 WL 5310853, at *4 (S.D. Tex. Sept. 11, 2015) (describing the 2015 amendments to the Act).[7]
Senate Bill 746 also contains a procedure for modifying the civil commitment orders of persons committed before the amended Act's effective date, stating:
If a civil commitment requirement imposed under Chapter 841, Health and Safety Code, before the effective date of this Act differs from any of the civil commitment requirements listed in Section 841.082, Health and Safety Code, as amended by this Act, the applicable court with jurisdiction over the committed person shall, after notice and hearing, modify the requirement imposed as applicable to conform to that section.
Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 40(b), 2015 Tex. Gen. Laws 2701, 2712; see also TEX. HEALTH & SAFETY CODE § 841.082(e). This mandamus proceeding arises out of a civil commitment order modified under that section.
B. Procedural Background
In November 2010, a jury unanimously found beyond a reasonable doubt that Clarence Brown was an SVP. The trial court rendered final judgment on the verdict and ordered Brown "civilly committed ... in accordance with *825 Texas Health & Safety Code § 841.081 for outpatient treatment and supervision." The court of appeals affirmed. In re Commitment of Brown , No. 09-10-00589-CV, 2012 WL 4466348 (Tex. App.-Beaumont Sept. 27, 2012, pet. denied) (mem. op.). The trial court also signed a civil commitment order imposing various requirements on Brown under section 841.082, including that he reside in supervised housing at a residential facility under contract with the state and submit to tracking.
The trial court issued a biennial review order in May 2013, concluding "no evidence" suggested that Brown's treatment had "resulted in his behavioral abnormality having changed to the extent that [he was] no longer likely to engage in a predatory act of sexual violence." The court ordered that Brown "shall remain a committed person" under the Act, subject to all requirements of the final judgment and commitment order.
In May 2015, the trial court appointed counsel to represent Brown in his second biennial review. On November 9, the trial court issued a biennial review order, again holding that Brown "shall remain a committed person" under the Act.
In the meantime, in July 2015, the Office gave written notice to persons previously committed under the Act about the 2015 amendments thereto, including "the change of the civil commitment program from an outpatient program to a tiered treatment program." The notice informed the recipients, including Brown, of their right to notice and a hearing before being transitioned to the new program. In August 2015, the State filed an "Opposed Motion for Placement in Tiered Treatment Program," requesting that the trial court amend Brown's final judgment and civil commitment order to conform to the amended Act. Brown moved for appointment of counsel to represent him at any hearings conducted on the State's motion, arguing that he had a "vested liberty interest in his outpatient status" and that due process entitled him to assistance of counsel when his liberty was at stake. The trial court denied Brown's motion for counsel and held a hearing on the State's motion on August 27. On October 21, the court granted the State's motion, ordered Brown to be placed in the tiered treatment program, and issued an amended civil commitment order. Among other things, the amended order required that Brown be provided with "appropriate sex offender treatment and necessary supervision pursuant to Tex. Health & Safety Code § 841.0831 [the tiered treatment program]" and "reside where instructed" by the Office. According to Brown, he was moved from the Southeast Texas Transitional Center in Houston to the Texas Civil Commitment Center in Littlefield.
Brown filed a petition for writ of mandamus in the court of appeals, arguing: (1) the trial court's failure to appoint counsel to represent him at the hearing on the State's motion, which placed his liberty at risk, violated his due process rights under the United States and Texas Constitutions; (2) the amendments to the Act do not contemplate modifying existing civil commitment orders to require placement in the tiered treatment program; and (3) if they do, the amended Act is unconstitutionally punitive and retroactive as applied because it provides for the possibility of "total confinement" and Brown "has a vested liberty interest in outpatient treatment" under the terms of his final judgment. In a supplemental petition, Brown argued the amended Act violates the Texas Constitution's separation-of-powers clause. Brown requested that the court of appeals vacate the amended commitment order and either modify it to require outpatient treatment only or order the trial court to appoint counsel and hold a new hearing on the State's motion.
*826 A divided court of appeals conditionally granted mandamus relief. 501 S.W.3d 116 (Tex. App.-Beaumont 2016, orig. proceeding). Citing its own recent precedent,[8] the court first rejected Brown's argument that he retained a statutory right to outpatient treatment as well as Brown's constitutional challenges to the amended Act. Id. at 117-18. However, the court of appeals held Brown was entitled to counsel at the hearing on the State's motion, though "for a different reason than urged in his petition." Id. at 117. The court recognized that a hearing to modify a commitment order, conducted under Subchapter E, is not included in the definition of a "civil commitment proceeding" for which the Act requires appointed counsel. Id. at 119 (citing TEX. HEALTH & SAFETY CODE §§ 841.002(3-a), .005(a) ). But the court noted that when the State served its motion to modify on Brown, he had already been appointed counsel to represent him in his Subchapter F biennial review, which took place during the same general time frame. Id. Further, one of the functions of a biennial review is to consider whether to modify "a requirement imposed on the person under [the Act]." Id. (citing TEX. HEALTH & SAFETY CODE § 841.102(c)(1) ). Accordingly, the court concluded that the "scope of [appointed] counsel's representation for the biennial review included the consideration and hearing on the State's motion to modify the civil commitment order to require Brown to participate in the tiered treatment program." Id. "Under these circumstances," the court of appeals held, "the trial court abused its discretion by denying Brown's request to be represented by counsel at the hearing." Id. The court of appeals did not address Brown's contention that he was entitled to appointed counsel as a matter of due process, although the same court rejected a similar contention in another mandamus proceeding. See In re Terry , No. 09-16-00208-CV, 2016 WL 4698648, at *2 (Tex. App.-Beaumont Sept. 8, 2016, orig. proceeding) (mem. op.).
II. Analysis
A. Standard of Review and Error Preservation
We may review a court of appeals' issuance of a writ of mandamus to determine if it constituted a clear abuse of discretion. Ginsberg v. Fifth Court of Appeals , 686 S.W.2d 105, 107 (Tex. 1985) ; TEX. GOV'T CODE § 22.002(a). In so doing, however, our "focus remains on the trial court's order." Johnson v. Fourth Court of Appeals , 700 S.W.2d 916, 918 (Tex. 1985).
The State argues that the court of appeals abused its discretion for two principal reasons. First, the State complains that the court of appeals granted mandamus relief on a ground that was never presented to the trial court. Specifically, Brown argued (in both the trial court and the court of appeals) that he was entitled to counsel on constitutional due process grounds, while the court of appeals relied on the statutory right to counsel in a biennial review in concluding the trial court abused its discretion. Second, the State argues the court of appeals erroneously construed the Act to entitle Brown to representation by counsel in a Subchapter E modification proceeding solely because he already had appointed counsel in his then-pending biennial review under Subchapter F.
We need not decide whether the statutory ground relied on by the court of appeals *827 was properly presented to the trial court. Assuming that it was, for the reasons discussed below we hold that the court of appeals nevertheless abused its discretion in concluding Brown was statutorily entitled to appointed counsel. See In re Cerberus Capital Mgmt., L.P. , 164 S.W.3d 379, 382 (Tex. 2005) (noting that a "court abuses its discretion ... if it clearly fails to correctly analyze or apply the law").
B. Statutory Right to Counsel
Civil litigants are generally not entitled to be represented by counsel absent a legislative mandate. See Gibson v. Tolbert , 102 S.W.3d 710, 712 (Tex. 2003). The Legislature has provided such a mandate with respect to certain portions of proceedings under the Act. Specifically, as noted, the Act requires appointment of counsel to represent an indigent person subject to a "civil commitment proceeding," defined as a trial or hearing conducted under Subchapter D (governing the initial trial to determine whether a person is an SVP and must be civilly committed), Subchapter F (governing biennial reviews), or Subchapter G (governing petitions for release from commitment). TEX. HEALTH & SAFETY CODE §§ 841.002(3-a), .005.
Conspicuously absent from the statute is a provision for appointed counsel in a Subchapter E proceeding. And proceedings relating to the imposition and modification of requirements associated with a civil commitment order, like those at issue here, fall squarely under Subchapter E. See id. § 841.082(a), (e). Indeed, the court of appeals recognized both that (1) a Subchapter E hearing is not included in the definition of "civil commitment proceeding" for which counsel must be appointed and (2) Subchapter E encompasses the modification of an existing civil commitment order to require participation in the tiered treatment program. 501 S.W.3d at 119. The logical next step would be to conclude, as the same court of appeals has in other cases, that a person has no statutory right to appointed counsel in a proceeding to amend a civil commitment order to conform to the Act's 2015 amendments. See In re Wilson , No. 09-16-00243-CV, 2016 WL 5225422, at *2 (Tex. App.-Beaumont Sept. 22, 2016, orig. proceeding) (mem. op.); In re Terry , 2016 WL 4698648, at *1.
But the court of appeals held the opposite, based solely on the fortuitous timing of Brown's biennial review in relation to the hearing on the State's motion to amend. See 501 S.W.3d at 119. The court essentially concluded that, because Brown was statutorily entitled to counsel for the Subchapter F biennial review, and because both the biennial review and the Subchapter E hearing on the State's motion concerned whether to modify civil commitment requirements, Brown was also statutorily entitled to counsel in the Subchapter E proceeding. We disagree. As the court of appeals recognized, "the parties treated the modification of the civil commitment requirements as a separate proceeding completely disconnected from the ongoing biennial review." Id. The trial court did so as well, confirming at the outset of the hearing on the State's motion that it was "not a biennial review." This is consistent with the Act's separate treatment of civil commitment requirements, which may be modified under Subchapter E "at any time after notice ... and a hearing," TEX. HEALTH & SAFETY CODE § 841.082(e), and biennial reviews under Subchapter F, which involve the court's consideration of an examination report prepared by the Office and require a hearing only if the court makes certain predicate findings, see id. §§ 841.101-.102.
The court of appeals' reliance on the timing of the State's motion to amend in relation to the biennial review is erroneous *828 for several reasons. First and foremost, it reads a requirement into the statute that simply is not there. See Iliff v. Iliff , 339 S.W.3d 74, 80-81 (Tex. 2011) ("We have no right to engraft upon the statute any conditions or provisions not placed there by the legislature."). Nothing in the Act indicates the Legislature intended to engraft Subchapter F's right to counsel onto a Subchapter E proceeding that temporally coincides with a biennial review. Further, the court of appeals' reading of the statute leads to the nonsensical and unwieldy result that a committed person's right to counsel in a proceeding to modify a civil commitment requirement hinges on its timing. Quite simply, the right to counsel under Subchapter F does not entitle a committed person to appointed counsel in a Subchapter E proceeding.
Brown also argues that, because the 2010 final judgment declaring him an SVP required outpatient treatment, any modifications to that requirement must be conducted under Subchapter D, which guarantees counsel. We disagree. As noted, Subchapter D governs the initial trial conducted to determine whether a person is an SVP. See TEX. HEALTH & SAFETY CODE §§ 841.061 -.065. Subchapter E then begins with the following statement: "If at a trial conducted under Subchapter D the judge or jury determines that the person is a sexually violent predator, the judge shall commit the person for treatment and supervision to be coordinated by the office." Id. § 841.081(a). Subchapter D simply has nothing to do with the terms of civil commitment.
Accordingly, we hold that the trial court was not statutorily required to appoint an attorney to represent Brown with respect to the State's motion to amend. We further hold that the court of appeals abused its discretion in ordering the trial court to appoint counsel on statutory grounds.
C. Due Process Grounds for Appointment of Counsel
As noted, because the court of appeals granted mandamus relief on statutory grounds, it did not address the constitutional due process arguments Brown asserted in support of his right to counsel. The State argues that by reurging these unaddressed arguments here, Brown "effectively asks this Court to exercise mandamus jurisdiction in the first instance" without stating a compelling reason for doing so. See TEX. R. APP. P. 52.3(e) (requiring a petition for writ of mandamus to "be presented first to the court of appeals unless there is a compelling reason not to do so"). We disagree. Brown presented his mandamus petition, which included his due process arguments, to the court of appeals. He presents these same arguments here as an alternative ground to deny the State's petition. That the court of appeals chose to grant Brown's petition for different reasons does not preclude us from addressing the arguments he raised.
On the merits, Brown argues that due process entitled him to counsel in defending the State's motion to modify, the purpose of which was to remove him from an outpatient treatment program and place him in a program that includes the possibility of inpatient treatment. Brown argues that he should be afforded "the full panoply of due process rights when the State seeks to impose a much more restrictive curtailment of his liberties."
In analyzing Brown's due process argument, we find guidance in the United States Supreme Court's opinion in Vitek v. Jones , 445 U.S. 480, 100 S.Ct. 1254, 63 L.Ed.2d 552 (1980), and the Fifth Circuit's decision in Meza v. Livingston , 607 F.3d 392 (5th Cir. 2010). In Vitek , the issue was the adequacy of the statutory procedures by which an inmate could be involuntarily *829 transferred to and treated at a mental hospital. 445 U.S. at 484, 100 S.Ct. 1254. Noting that the "loss of liberty produced by an involuntary commitment is more than a loss of freedom from confinement," the Court held that an inmate subject to such commitment was entitled to due process protections notwithstanding a valid criminal conviction. Id. at 492-93, 100 S.Ct. 1254. The Court further held that the inmate was entitled to notice, a hearing, and an independent decisionmaker. Id. at 496, 100 S.Ct. 1254. And the Court concluded that, in light of the mental-health concerns at issue, the inmate was entitled to "qualified and independent assistance," but the Court stopped short of requiring that such assistance include representation by a licensed attorney. Id. at 497, 100 S.Ct. 1254 (Powell, J., concurring).[9]
In Meza , the Fifth Circuit reviewed the adequacy of the State's procedures for placing sex offender restrictions on a parolee who had never been convicted of a sex offense. 607 F.3d at 395. The court found that the parolee, Meza, had a liberty interest in being free from being required to register as a sex offender and participate in sex offender therapy. Id. at 401. In considering whether the provided process was adequate, the court applied the Mathews v. Eldridge balancing test, which requires consideration of three factors:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedure used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.
Id. at 402 (quoting Mathews v. Eldridge , 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ). Noting the "serious deprivation of liberty" and "stigmatizing consequences" associated with sex offender registration and treatment, the court concluded the private interest affected was significant. Id. The court also found a high risk of an erroneous deprivation of that interest because the procedures in place did not give the parolee or any attorney he retained the opportunity to inspect the information provided to the parole board or to correct or explain that information. Id. at 402-03. Finally, the court recognized the State's significant interest in rehabilitating and monitoring sex offenders and the "significant additional costs" the State would incur in providing extra procedural protections. Id. at 403.
Considering these factors, the court held that the minimum process owed the parolee included written notice; disclosure of evidence against him; an opportunity to be heard, present evidence, and confront adverse witnesses; an impartial decisionmaker; and a written statement explaining the decision. Id. at 409-10. However, the court concluded that the State was not required to provide counsel to Meza in light of the substantial cost to the State and the absence of the concerns at issue in Vitek , where the inmate allegedly suffered from a mental illness that potentially rendered him unable to understand or exercise his rights. Id. at 411.
While neither Vitek nor Meza is factually directly on point, the results of those cases are instructive and advise against requiring appointed counsel in this *830 case. Certainly, Brown has a liberty interest in being free from inpatient treatment. See In re Commitment of Fisher , 164 S.W.3d at 653 (comparing the pre-2015 Act with the analogous Kansas statute upheld by the United States Supreme Court and noting that "the intrusion" on the liberty of Texas SVPs committed to outpatient treatment is "far less restrictive than if he were confined in a secure facility in Kansas"). However, as we recognized in Fisher , commitment under the pre-2015 Act already involved "intensive treatment and supervision." Id. at 642. To that end, Brown's commitment in 2010 resulted in a significant loss of liberty, as Brown was required to, among other things, "reside in supervised housing at a Texas residential facility under contract with the Council on Sex Offender Treatment ... or at another location or facility approved by the Council." Such supervised housing can include substantial restrictions. See, e.g. , In re Commitment of Dodson , 434 S.W.3d 742, 745 (Tex. App.-Beaumont 2014, pet. denied) (noting that after being committed to outpatient treatment, Dodson "was required to wear a leg monitor" and "to live at a camera-monitored transitional facility, enclosed by a fence topped with barbed wire"). Importantly, Brown was afforded the full panoply of due process protections, including representation by counsel, when he was originally determined to be an SVP and subjected to these types of restrictions on his liberty. These are the same protections afforded to persons who are civilly committed under the amended Act. See In re Terry , 2016 WL 4698648, at *2 (holding that an SVP who had appointed counsel in his initial civil commitment proceeding in 2014 did not show that due process required the court to appoint counsel to represent him in a hearing on the State's motion to modify his commitment order pursuant to the 2015 amendments).
Further, neither the State's motion nor the trial court's order granting it placed Brown in inpatient treatment. The sole purpose of the motion was to modify the terms of Brown's civil commitment order that conflicted with the Act's 2015 amendments. See Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 40, 2015 Tex. Gen. Laws 2701, 2712 (directing the trial court to, after notice and a hearing, modify a civil commitment requirement that differs from those in section 841.082 of the amended Act to conform to that section); see also Richards , 2015 WL 5310853, at *2 (noting that the 2015 amendments "bring[ ] Texas's SVP scheme in line with similar programs that the Supreme Court has upheld as constitutional"). And it is undisputed that Brown received the required notice and hearing on the State's motion. In light of the motion's limited scope and the process already afforded Brown under state law, the risk of erroneous deprivation was significantly less severe than in Meza .
Finally, we must consider the State's interests. As recognized in Meza , the State has a significant interest in ensuring SVPs (and other sex offenders) are properly treated and monitored. 607 F.3d at 403. Moreover, we cannot ignore the significant cost associated with providing counsel for SVPs committed under the pre-2015 Act, whose commitment orders all conflict with the amendments.
In sum, taking all these factors into account-the liberty interest at stake, the risk of erroneous deprivation, and the State's interest-we hold that the minimum process to which Brown is entitled in connection with the State's motion to amend his commitment order to conform to the Act's 2015 amendments does not include appointed counsel. See Morrissey v. Brewer , 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). State law afforded Brown notice *831 and a hearing, which was sufficient process under the circumstances.
That said, we must emphasize the narrow scope of our holding. As noted, unlike the pre-2015 Act, the tiered treatment program provides for an additional level of confinement in the form of inpatient treatment at the more restrictive tiers. And the Act enumerates procedures for the movement of SVPs between treatment tiers. See TEX. HEALTH & SAFETY CODE § 841.0834 (allowing the Office to transfer a committed person to less restrictive or more restrictive housing and supervision under certain circumstances, and providing procedures for the person to request transfer to less restrictive supervision and to challenge a return to more restrictive supervision). Further, as amended, the Act continues to require a "biennial review of the status of the committed person," for which appointed counsel is required. Id. §§ 841.005, .102.[10] We express no opinion on whether these procedures are constitutionally adequate, and we express no opinion on any other constitutional challenges to the amended Act that may be brought.[11] We hold only that Brown was not entitled to appointed counsel on the State's motion to amend his civil commitment order to conform to the amended Act.
III. Conclusion
We hold that the trial court did not abuse its discretion in denying Brown's request for appointed counsel on the State's motion to modify his civil commitment order. Accordingly, the court of appeals abused its discretion in granting Brown mandamus relief. We conditionally grant the State's petition for writ of mandamus and order the court of appeals to vacate its own order conditionally granting mandamus relief. Our writ will issue only if the court fails to comply.
Justice Blacklock did not participate in the decision.

Unless otherwise stated, cites are to the current version of the Act.

Before the 2015 amendments, the agency was known as the Office of Violent Sex Offender Management.

A person is an SVP if he: "(1) is a repeat sexually violent offender; and (2) suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." Tex. Health & Safety Code § 841.003(a). The Act separately defines the terms "repeat sexually violent offender," id. § 841.003(b), "behavioral abnormality," id. § 841.002(2), and "predatory act," id. § 841.002(5).

These requirements "may be modified by the committing court at any time after notice to each affected party to the proceedings and a hearing." Id. § 841.082(e).

Subchapters A and H contain additional general and miscellaneous provisions, respectively.

The record is scant with respect to how the tiered treatment program is being administered. The only document providing any information is undated and contains responses to questions that appear to have been submitted by potential vendors to operate the new civil commitment center.

The amended Act continues to impose criminal penalties for violations of other civil commitment requirements, including that the SVP reside where instructed, submit to appropriate supervision and tracking, and refrain from contacting a victim or leaving the state without prior authorization. Tex. Health & Safety Code § 841.085 (imposing penalties for violations of subsections 841.082(a)(1), (2), (4), and (5) ).

See In re Williams , No. 09-16-00087-CV, 2016 WL 4249175, at *1-2 (Tex. App.-Beaumont Aug. 11, 2016, orig. proceeding) (mem. op.) (holding the amended Act is not unconstitutionally punitive or retroactive); In re Commitment of May , 500 S.W.3d 515, 520-26 (Tex. App.-Beaumont 2016, pet. denied) (same).

The plurality in Vitek would have required representation by counsel. 445 U.S. at 496-97, 100 S.Ct. 1254. Because the concurring justice would not go so far, the concurring opinion reflects the Court's holding. See ids="1777850" index="73" url="https://cite.case.law/us/445/480/">id. at 497, 100 S.Ct. 1254 (modifying the trial court's judgment to conform to Justice Powell's concurring opinion).

Of course, this is a limited sample of the Act's many provisions governing civil commitment. We specifically note them only because they appear particularly relevant to the extent of the liberty restrictions imposed on an SVP under the amended Act.

As noted, Brown asserted several constitutional challenges to the amended Act in the trial court and the court of appeals. The court of appeals rejected those challenges, 501 S.W.3d at 117-18, and Brown does not present them as alternative grounds to deny mandamus relief here.