# Supreme Court of Texas

No. 20-0523

Gerard Matzen,

*Petitioner*,

v.

Marsha McLane, Director of the Texas Civil Commitment Office,
and the Texas Civil Commitment Office,

*Respondents*

On Petition for Review from the
Court of Appeals for the Third District of Texas

**Argued September 29, 2021**

JUSTICE BLACKLOCK delivered the opinion of the Court.

Petitioner Gerard Matzen sued the Texas Civil Commitment Office and its executive director. He brought several claims regarding his civil commitment as a sexually violent predator (SVP). The district court dismissed most of Matzen's suit, but it allowed him to pursue his claim that charging him for his housing, treatment, and GPS tracking is both an unconstitutional taking and a denial of due process of law. Both sides appealed. The court of appeals affirmed over a dissent that

would have dismissed all the claims. We agree with the dissent. All of Matzen's claims fail as a matter of law, and we render judgment dismissing them.

## I. Factual and Procedural Background

The Sexually Violent Predators Act, first enacted in 1999, establishes "a civil commitment procedure for the long-term supervision and treatment of sexually violent predators." TEX. HEALTH & SAFETY CODE § 841.001. A "sexually violent predator" is a "repeat" offender who "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a).

Following a trial conducted pursuant to the SVP Act, a jury in 2014 found beyond a reasonable doubt that Matzen was an SVP. *See id.* §§ 841.061, 841.062(a). In response to the verdict, the district court issued a civil commitment order. *See id.* § 841.081(a). The commitment order placed Matzen in "outpatient" treatment, which means he lived in a private residential facility and was allowed unsupervised trips for shopping, treatment, and other activities. The commitment order further required that he not contact certain people, not use alcohol or other intoxicants, submit to use of a tracking device, and provide blood and hair samples. Matzen appealed the order, but his appeal was dismissed for want of prosecution. *In re Commitment of Matzen*, No. 09-14-00115-CV, 2014 WL 5307131 (Tex. App.—Beaumont Oct. 16, 2014, no pet.).

At the time of Matzen's original commitment order, the SVP Act required the court to commit an SVP to "outpatient treatment and

2

supervision."[1]  In 2015, the Legislature amended the SVP Act.[2]  Under the new law, committed SVPs enter a "tiered" treatment program instead of an outpatient program.  The tiered program is intended to "provide for a seamless transition of a committed person from a total confinement facility to less restrictive housing and supervision and eventually to release from civil commitment, based on the person's behavior and progress in treatment."  TEX. HEALTH & SAFETY CODE § 841.0831(b).  "Thus, while the Act's prior version contemplated significant limitations on an SVP's housing and movements, the amended Act goes further by authorizing 'total confinement,' at least in the more restrictive treatment tiers."  *In re State*, 556 S.W.3d 821, 824 (Tex. 2018).

Prior to the 2015 amendments, an SVP was responsible only for the cost of his GPS tracking service.[3]  After the amendments, SVPs such as Matzen, if they can afford to do so, must also pay a monthly amount "necessary to defray the cost of providing [] housing, treatment, and service" to the SVP.  TEX. HEALTH & SAFETY CODE § 841.084(a)(2)(A).  Matzen's suit arises primarily from his objection to paying these costs.

The Texas Civil Commitment Office (TCCO) runs the SVP program.  *Id.* § 841.007.  In 2017 and 2018, TCCO adopted rules

---

[1] Act of May 30, 1999, 76th Leg., R.S., ch. 1188, § 4.01, 1999 Tex. Gen. Laws 4143, 4147; *see also In re Commitment of Fisher*, 164 S.W.3d 637, 641 (Tex. 2005).

[2] Act of May 21, 2015, 84th Leg., R.S., ch. 845, 2015 Tex. Gen. Laws 2701.

[3] Act of May 18, 2007, 80th Leg., ch. 593, § 1.13, sec. 841.084, 2007 Tex. Gen. Laws 1120, 1125.

implementing the amended Act's requirement that certain additional costs be assessed against SVPs. *See* 37 TEX. ADMIN. CODE §§ 810.122, 810.273. These rules, which the parties call the "cost-recovery rules," provide that TCCO shall not require payment of costs exceeding 50 percent of the SVP's income. *Id.* § 810.273. Under a TCCO policy contained in the record, SVPs are actually required to pay 33 percent of their income toward cost recovery.[4]

The amended Act required that commitment orders covering SVPs like Matzen be adjusted to comply with the statutory changes. It further mandated an individualized hearing prior to the modification of each SVP's commitment order.[5] In Matzen's case, the State filed a motion in 2015 to amend Matzen's commitment as required by the new law. The district court held the required hearing, at which Matzen was personally present and was permitted to present evidence and to call and cross-examine witnesses.

In October 2015, the court amended Matzen's commitment order "to conform with the legislative changes contained in Senate Bill 746."[6] The amended order placed Matzen in a "tiered" treatment program. It also ordered Matzen to "comply with all requirements and rules imposed

---

[4] The State advised at oral argument that TCCO's current policies require SVPs to pay only 25 percent of their income and that the scope of eligible income has been narrowed. This amended policy is not part of the record, but our analysis does not turn on the fraction of SVP income collected by TCCO or the precise definition of income subject to collection.

[5] Act of May 21, 2015, 84th Leg., R.S., ch. 845, § 40(b), 2015 Tex. Gen. Laws 2701, 2712.

[6] This language is found in the trial court's Order on Motion for Placement in Tiered Treatment Program.

4

by TCCO." One such rule is the cost-recovery scheme of which Matzen now complains. Matzen appealed the order amending his civil commitment. *See* TEX. HEALTH & SAFETY CODE § 841.146(b). He later voluntarily dismissed this appeal. *In re Commitment of Matzen*, No. 09-16-00014-CV, 2016 WL 637904 (Tex. App.—Beaumont Feb. 18, 2016, no pet.).

Matzen's amended commitment order required he be moved from an outpatient residence to the Texas Civil Commitment Center in Littlefield, Texas. The Littlefield facility is a "total-confinement" facility, which we understand to mean that Matzen was no longer permitted to make unsupervised trips away from the facility. It is operated by Correct Care Recovery Solutions, a private contractor. Pursuant to its cost-recovery rules, TCCO ordered Matzen to pay to the State one-third of his military pension and one-third of his pay under a Correct Care work program to defray the costs of his commitment.

In August 2017, Matzen brought this lawsuit pro se. He was later represented by counsel in district court and on appeal. He sued TCCO and the Director of the Office, Marsha McLane, in her official capacity (collectively "the State"). He also sued Correct Care. He has thus far filed four district-court petitions asserting a host of evolving common-law, statutory, and constitutional claims. Matzen's live petition alleges that one or more of the defendants has (1) violated the Texas Administrative Procedure Act; (2) acted ultra vires; (3) misappropriated property; (4) violated his rights of free speech and peaceable assembly; (5) breached a contract; (6) engaged in unlawful search and seizure; (7) committed an unconstitutional taking; (8) denied him due process;

5

and (9) created an illegal debtor's prison. He seeks declaratory, injunctive, and mandamus relief.

Most of Matzen's multifarious claims stem from his conviction that, because he was committed before the Legislature amended the SVP Act, he should (1) not have to pay anything under the cost-recovery rules, and (2) remain in outpatient treatment rather than confinement. The predominant legal argument underlying Matzen's claims is that TCCO's cost-recovery rules are invalid because they were enacted by the Board of TCCO rather than TCCO "itself." Matzen points to section 841.141(a) of the Health and Safety Code, which reads: "The office by rule shall administer this chapter." He claims that TCCO's Board adopted the cost-recovery rules in violation of this provision, which he reads to require the TCCO "office"—not the TCCO Board—to make the rules. Because TCCO's rules were adopted by the wrong entity, he contends, they are all invalid and cannot be applied to him. As he has pleaded them, nearly all Matzen's claims rest in one way or another on this view of how TCCO's rulemaking power works, a view which, as explained below, is without foundation.

The State filed a plea to the jurisdiction asserting immunity from suit. The district court dismissed all claims against the State except the takings claim and the due-process claim. Both remaining claims challenge the requirement that Matzen pay part of the costs of housing, treatment, and GPS tracking. Both sides brought an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) (authorizing interlocutory appeal of the grant or denial of a plea to the jurisdiction of

a governmental entity).[7] The court of appeals affirmed across the board. 604 S.W.3d 91, 97, 117 (Tex. App.—Austin 2020). One justice dissented in part and would have dismissed all Matzen's claims. *Id.* at 118–19 (Goodwin, J., concurring and dissenting). Both sides petitioned for review in this Court, and we granted both petitions.

## II. Discussion

Sovereign immunity protects the State of Texas and its agencies and subdivisions from suit and from liability. *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 301 (Tex. 2019). TCCO, a state agency, enjoys sovereign immunity unless the Legislature waives it. *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 594 (Tex. 2001). Because the assertion of sovereign immunity implicates the courts' jurisdiction, immunity is properly raised in a plea to the jurisdiction. *Hous. Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016). If, as here, a plea "challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). We review orders on pleas to the jurisdiction *de novo*. *Univ. of Tex. M.D. Anderson Cancer Ctr. v. McKenzie*, 578 S.W.3d 506, 512 (Tex. 2019).

Matzen sued both TCCO and its executive director, McLane. Notwithstanding sovereign immunity, Texas law recognizes "ultra vires" claims seeking prospective injunctive relief against individual government officials in their official capacities. *City of El Paso v.*

---

[7] Correct Care, a private entity, is not a party to this interlocutory appeal.

*Heinrich*, 284 S.W.3d 366, 373, 376 (Tex. 2009). "Even if a government entity's immunity has not been waived by the Legislature, a claim may proceed against a government official in his official capacity if the plaintiff successfully alleges that the official is engaging in *ultra vires* conduct." *Chambers–Liberty Cntys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). "The basic justification for this *ultra vires* exception to sovereign immunity is that *ultra vires* acts—or those acts without authority—should not be considered acts of the state at all. Consequently, '*ultra vires* suits do not attempt to exert control over the state—they attempt to reassert the control of the state' over one of its agents." *Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) (citation omitted and quoting *Heinrich*, 284 S.W.3d at 372).

Plaintiffs who seek to bypass sovereign immunity using an ultra vires claim must plead, and ultimately prove, that the defendant government official "acted without legal authority or failed to perform a ministerial act." *Heinrich*, 284 S.W.3d at 372. An officer acts without legal authority "if he exceeds the bounds of his granted authority or if his acts conflict with the law itself." *Hous. Belt & Terminal Ry.*, 487 S.W.3d at 158. If, however, the actions alleged to be ultra vires were not truly outside the officer's authority or in conflict with the law, the plaintiff has not stated a valid ultra vires claim and therefore has not bypassed sovereign immunity. *See Chambers–Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 344–45. In such cases, sovereign immunity continues to protect state officials from both suit and liability in their official capacities. *Hall*, 508 S.W.3d at 238; *Heinrich*, 284 S.W.3d at 372.

8

As we have said before, to defeat a plea to the jurisdiction, the plaintiff suing the state or its officers must plead facts that, if true, "affirmatively demonstrate" that sovereign immunity either does not apply or has been waived. *E.g.*, *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 205 (Tex. 2020); *Miranda*, 133 S.W.3d at 226. As applied to ultra vires claims, this rule requires the plaintiff's petition to allege facts affirmatively demonstrating actionable ultra vires conduct by state officials in order to avoid dismissal on jurisdictional grounds due to sovereign immunity. *Hall*, 508 S.W.3d at 238; *Chambers–Liberty Cntys. Navigation Dist.*, 575 S.W.3d at 344–45; *Klumb v. Hous. Mun. Emps. Pension Sys.*, 458 S.W.3d 1, 17 (Tex. 2015) (dismissing suit because plaintiffs failed to plead actionable ultra vires conduct). Likewise, if the plaintiff seeks to establish a waiver or exception to sovereign immunity apart from an ultra vires claim, the pleaded facts must "affirmatively demonstrate" that the waiver or exception applies. *Miranda*, 133 S.W.3d at 226.

The court of appeals may have misperceived these pleading requirements. It placed a burden on the State to demonstrate that "Matzen's pleadings could never allege a viable takings claim [or due-process claim]." 604 S.W.3d at 117. To the contrary, as the dissent in the court of appeals observed, "it was Matzen's burden to allege facts that affirmatively demonstrate that sovereign immunity from suit has been waived or does not apply." *Id.* at 118 (Goodwin, J., concurring and dissenting) (citing *Hall*, *Klumb*, *Heinrich*, and *Miranda*). The question is not whether additional, hypothetical facts could come to light that would, in the future, allow Matzen to state a viable ultra vires claim or

9

invoke an exception to, or waiver of, sovereign immunity. In other words, the State need not show that "Matzen's constitutional due process and takings claims could never exist," as the court of appeals required. 604 S.W.3d at 117. Instead, the proper question is whether Matzen's pleaded facts "affirmatively demonstrate" either that state officials are engaged in ultra vires conduct or that Matzen otherwise has stated a valid claim not barred by sovereign immunity. If additional facts would be necessary to state a viable ultra vires claim or to state a viable claim falling within a waiver or exception to immunity, then the plaintiff has not affirmatively demonstrated the court's jurisdiction. In such a case, a plea to the jurisdiction should be granted. *Klumb*, 458 S.W.3d at 17; *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011) ("[T]he Secretary retains immunity from suit unless the voters have pleaded a viable claim.").

## A. The State's Petition

The courts below denied the State's plea to the jurisdiction as to Matzen's due-process claim and his takings claim, both of which are alleged under the state and federal constitutions. As pleaded, these claims fail as a matter of law. We render judgment dismissing them.

### 1. Due Process

Matzen did not plead an actionable due-process violation.[8] His multifaceted invocations of the due-process clause can be divided into

---

[8] Matzen alleged a due-process violation under the U.S. Constitution and a due-course-of-law violation under the Texas Constitution. *See* U.S. CONST. amend. XIV, § 1; TEX. CONST. art. I, § 19 ("No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land."). When

two categories.  First, he claims TCCO's cost-recovery rules are invalid because TCCO's Board adopted them.  In Matzen's view, the Act empowers only TCCO "itself," not its Board, to adopt rules.  Disposing of this argument disposes of most of Matzen's claims, which rely in one way or another on his misconception of TCCO's rulemaking authority.  The court of appeals correctly rejected Matzen's attempt to separate the rulemaking authority of the state agency called TCCO from the authority of TCCO's appointed Board to govern the agency.  604 S.W.3d at 101–02.

The SVP Act states: "The office by rule shall administer this chapter."  TEX. HEALTH & SAFETY CODE § 841.141(a).  Other sections of the Act empower "the office" to enact rules or to make other decisions, such as determining how much an SVP "shall pay to the office" to defray the cost of treatment.  *Id*. §§ 841.007, 841.084.  Matzen reads these provisions to grant authority to "the office" itself, apart from its governing Board.  Although the Legislature has directed that TCCO "is governed by a board," TEX. GOV'T CODE § 420A.002(b), Matzen nevertheless conceptualizes the TCCO "office" as exercising independent authority distinct from that exercised by the TCCO Board.  He bases this view primarily on the existence of separate definitions of

interpreting Texas's due-course-of-law clause, we are not bound by federal due-process jurisprudence but often consider it as persuasive authority. *E.g.*, *Univ. of Tex. Med. Sch. at Hous. v. Than*, 901 S.W.2d 926, 929 (Tex. 1995).  Where, as here, the parties do not suggest any divergence in the meaning of the two provisions, we have treated them as coextensive. *E.g.*, *Tex. S. Univ. v. Villarreal*, 620 S.W.3d 899, 905 (Tex. 2021).  Because neither Matzen nor the State suggests otherwise, we treat Matzen's allegation of federal due-process violations and state due-course violations as a single claim.

11

"office" and "board" in TCCO's enabling statute.[9] Because the TCCO Board adopted the cost-recovery rules, Matzen reasons, the agency failed to follow the Act, which vests rulemaking authority exclusively in "the office."

Matzen's idiosyncratic view of the separation between state agencies and their boards finds no support in the law. Like any government agency, TCCO must act through natural persons duly vested with legal authority to make decisions for the agency. For agencies with elected executives, like the Attorney General's Office or the General Land Office, the people of Texas decide who will have ultimate authority to make decisions for the state agency. TEX. CONST. art. IV, §§ 1, 2. For many agencies created by the Legislature, executive decision-making authority over the agency is vested by law in a multi-member board appointed by elected officials, most often the Governor. This is the case for TCCO, which is "governed by a board." TEX. GOV'T CODE § 420A.002(b). The Governor appoints TCCO's five-member Board and designates its presiding officer. *Id.* §§ 420A.002(b), 420A.003.

Adopting Matzen's distinction between the TCCO "office" and its board would vest state agency employees directly with executive power by authorizing them to act without the oversight of politically appointed governing officials. But if state agency "offices" exercised independent power apart from a chain of command tethered to elected officials, "the public [could] not 'determine on whom the blame or the punishment of

---

[9] The "Office" is defined as "the Texas Civil Commitment Office." TEX. GOV'T CODE § 420A.001(2); TEX. HEALTH & SAFETY CODE § 841.002(4). The "Board" is defined as "the governing Board of the Texas Civil Commitment Office." TEX. GOV'T CODE § 420A.001(1).

a pernicious measure, or series of pernicious measures ought really to fall.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 497 (2010) (quoting THE FEDERALIST NO. 70, at 476 (J. Cooke ed. 1961) (Alexander Hamilton)). The entire government of this State rests on the principle that "[a]ll political power is inherent in the people, and all free governments are founded on their authority." TEX. CONST. art. I, § 2. As with the federal constitution, our Texas Constitution "was adopted to enable the people to govern themselves, through their elected leaders." *Free Enter. Fund*, 561 U.S. at 499. The appointment of agency board members by elected officials provides crucial democratic legitimacy to state agencies, which operate under the oversight of appointees chosen by officers who are directly accountable to the people of Texas, from whom "all political power" in this State must flow. TEX. CONST. art. I, § 2.[10]

Accepting Matzen's invitation to sever the connection between state agencies and their governing officials would implicate these foundational constitutional questions, and perhaps others. We need not delve into them here, however, because Matzen's approach violates the Legislature's direction that employees of TCCO, and many other agencies like it, do not exercise executive power on their own but are instead "governed by a board" appointed by elected officials. TEX. GOV'T

---

[10] *See Free Enter. Fund*, 561 U.S. at 499 ("One can have a government that functions without being ruled by functionaries, and a government that benefits from expertise without being ruled by experts. . . . The growth of the Executive Branch, which now wields vast power and touches almost every aspect of daily life, heightens the concern that it may slip from the . . . control . . . of the people.").

13

CODE § 420A.002(b). The Legislature's instruction that TCCO will be "governed by a board" means just what it says. Like dozens of other state agencies, all of TCCO's actions, including its promulgation of administrative rules, are ultimately "governed by a board." *Id.* The adoption of cost-recovery rules by TCCO's Board thus complied with the agency's legislatively mandated chain of command.

Having disposed of Matzen's complaint about TCCO's rulemaking authority, we have disposed of nearly all his claims. We agree with the dissenting justice in the court of appeals that the essence of Matzen's due-process and takings claims "is that he should not have to pay *any* amount toward the costs of the housing, treatment, or tracking services" because the TCCO Board lacks rulemaking authority. 604 S.W.3d at 118–19 (Goodwin, J., concurring and dissenting). The majority in the court of appeals nevertheless construed Matzen's petition to allege due-process and takings allegations apart from his rulemaking complaint. Even on those terms, both claims fail as a matter of law.

As for the due-process claim, the court of appeals understood Matzen's petition to claim that the assessment of costs of confinement against him pursuant to TCCO's rules deprived him of property without due process of law. The claim is that although Matzen had an individualized hearing when he was originally committed and another such hearing when his commitment order was amended to incorporate the cost-recovery rules, the constitution entitles him to yet another individualized hearing regarding the *amount* of the costs charged to him. This is incorrect.

14

The U.S. Constitution prohibits states from "depriv[ing] any person of life, liberty, or property without due process of law." U.S. CONST. amend. XIV. The Texas Constitution similarly protects a "citizen of this State" against the deprivation of "life, liberty, [or] property . . . except by the due course of the law of the land." TEX. CONST. art. I, § 19.[11] When analyzing a due-process claim, courts must first determine whether the claimant has been deprived of "life, liberty, or property." U.S. CONST. amend. XIV; *see Mosley v. Tex. Health & Hum. Servs. Comm'n*, 593 S.W.3d 250, 264 (Tex. 2019). Matzen asserts a property interest in the money he must pay to TCCO under the cost-recovery rules, and the State does not argue otherwise. Thus, because a protected property interest is implicated, we next "must determine what process is due." *Mosley*, 593 S.W.3d at 264.

It is often said that due process generally "requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* at 265. It is just as true, however, that "[w]hen the legislature enacts a law, or a state agency adopts a regulation, that affects a general class of persons, all of those persons have received procedural due process by the legislative process itself and they have no right to individual attention." *United States v. LULAC*, 793 F.2d 636, 648 (5th Cir. 1986); *see also Bi-Metallic Inv. Co. v. State Bd. of Equalization*, 239 U.S. 441, 445–46 (1915).

---

[11] In addition to protecting "life, liberty, [and] property," the Texas Constitution also provides that citizens shall not be "deprived of . . . privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. Neither party suggests the Texas clause's additional language makes a difference in this case.

Our decision in *In re State*, 556 S.W.3d 821 (Tex. 2018), concerned an SVP who, like Matzen, was subjected to an amended commitment order. We concluded that the SVP's due-process rights were adequately protected by the notice and hearing mandated by the Legislature. *Id.* at 830–31. The same is true of Matzen.

Matzen was given notice and a hearing in connection with his original commitment order. When that order was amended to conform to legislative changes, he again received an individualized hearing, as required by the SVP Act. The amendments to the SVP Act directed TCCO to calculate "a monthly amount that the office determines will be necessary to defray" the costs of confinement and to charge these costs to each SVP. TEX. HEALTH & SAFETY CODE § 841.084. Matzen participated in an individualized hearing that resulted in an order subjecting him to such costs. His amended commitment order states that Matzen will be charged costs set by TCCO. Moreover, both the SVP Act and Matzen's amended commitment order indicate that the conditions of his confinement, which include the costs assessed to him, may be adjusted in the future pursuant to TCCO rules and policies.

The court of appeals reasoned that Matzen stated a possible due-process violation because certain TCCO cost-recovery rules were adopted after Matzen's hearing modifying his commitment order. 604 S.W.3d at 114. The State is correct, however, that Matzen's amended commitment order—for which he received an individualized hearing—states that TCCO will subject him to cost recovery as required by the SVP Act and TCCO rules. Matzen cites no authority supporting his assertion that every adjustment to TCCO's generally applicable cost-

recovery rules that affects him and post-dates his amended commitment order triggers a renewed constitutional right to individualized notice and hearing. Nor does he claim that he has been charged costs above those dictated by TCCO's cost-recovery scheme. Instead, he challenges TCCO's authority to subject him to any changes in its cost-recovery scheme without first giving him an individualized hearing.

The State objects that such an individualized hearing for every SVP every time TCCO amends rules or policies affecting SVPs would grind TCCO to a halt. That may very well be true, but regardless of the practical consequences, the individualized process Matzen seeks is more process than is "due" to him under the constitution. TCCO need not provide each SVP with individualized process every time it alters generally applicable rules or policies governing committed SVPs. Matzen's due-process and due-course-of-law claims fail as a matter of law.

### 2. Takings Claim

We turn to Matzen's claim that charging him for his housing, treatment, and tracking is an unconstitutional taking. The federal Takings Clause provides that "private property" shall not "be taken for public use, without just compensation." U.S. CONST. amend. V. The Texas Takings Clause provides that "[n]o person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made." TEX. CONST. art. I, § 17(a).[12] "To

---

[12] As with the due-process issues, no party contends that the unique language of the Texas Takings Clause makes a difference in this case. We will therefore treat the state and federal clauses as providing coextensive

17

establish a takings claim, [the plaintiff] must prove (1) the State intentionally performed certain acts, (2) that resulted in a 'taking' of property, (3) for public use." *Gen. Servs. Comm'n v. Little–Tex Insulation Co.*, 39 S.W.3d 591, 598 (Tex. 2001).

Matzen has not pleaded a cognizable takings claim. As explained above, he is subject to a statute requiring him to pay a portion of the costs the State expends for his treatment, housing, and tracking. TEX. HEALTH & SAFETY CODE § 841.084(a); 37 TEX. ADMIN. CODE § 810.273. He cites no authority indicating that charging him costs of this nature is an unconstitutional taking. The State argues that the government may in a variety of contexts charge "user fees" for the value of government services without implicating takings law. There is ample authority for this position. In *United States v. Sperry Corp.*, the U.S. Supreme Court held that "a reasonable user fee is not a taking if it is imposed for the reimbursement of the cost of government services." 493 U.S. 52, 63 (1989). Courts frequently apply this rule to services provided to the incarcerated.[13] The logic of these authorities bars Matzen's takings claim.

---

protection. *City of Austin v. Travis Cnty. Landfill Co.*, 73 S.W.3d 234, 238 (Tex. 2002) (noting that similar wording of federal and state takings provisions "has led us . . . to rely on the United States Supreme Court's interpretation of the federal takings clause in construing our takings provision").

[13] *E.g.*, *Vance v. Barrett*, 345 F.3d 1083, 1089–90 (9th Cir. 2003); *Williamson v. Northampton Cnty. Prison*, Civ. No. 12-2333, 2012 WL 1656291, at *2 (E.D. Pa. May 9, 2012); *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1228 (S.D. Cal. 2004); *Dean v. Lehman*, 18 P.3d 523, 526, 534–35 (Wash. 2001); *Weber v. Hvass*, 626 N.W.2d 426, 435–36 (Minn. Ct. App. 2001).

The court of appeals reasoned that it could not tell from Matzen's pleading whether the costs charged to Matzen truly compensated the government for the value of the services provided. 604 S.W.3d at 117. This was so, in the court's view, because no evidence in the record showed how much Matzen's confinement costs the government. *Id.* It remained possible, then, that Matzen was paying for more than he was getting, which from the court of appeals' perspective meant he could potentially state a takings claim.

We will not address whether a user fee exceeding the government's costs could amount to a taking, because Matzen never pleaded such a claim. The court of appeals hypothesized that he might be able to do so. But the proper question when ruling on the State's plea to the jurisdiction is not whether Matzen *could* plead such a claim. The question is whether he has done so. Because he has not pleaded a viable takings claim—whether or not he *could* do so—his petition is insufficient to overcome the State's immunity and must be dismissed in response to the State's plea to the jurisdiction.

As the dissent in the court of appeals correctly pointed out, Matzen's petition is devoid of any suggestion "that the amount that he has paid or is responsible to pay exceeds the actual costs of the housing, treatment, and tracking services provided to him." 604 S.W.3d at 118–19 (Goodwin, J., concurring and dissenting). Instead, Matzen's petition sought recovery from the State of "*all* money paid by him as payment for housing, treatment and/or GPS monitoring service." His claim has always been that TCCO lacks authority to charge him anything, not that TCCO has charged him more than it costs the agency to confine him.

19

When ruling on a plea to the jurisdiction, the court's task is not to identify available legal theories and deny the plea if those theories could be viable with more factual development. Again, when sovereign immunity is asserted, it is not the State's burden to show that the plaintiff could never state a viable claim. Instead, it is the plaintiff's burden to plead facts that affirmatively state a viable claim. "'In the absence of a properly pled takings claim, the state retains immunity'" and the court "must sustain a properly raised plea to the jurisdiction." *City of Houston v. Carlson*, 451 S.W.3d 828, 830 (Tex. 2014) (quoting *Hearts Bluff Game Ranch, Inc. v. State*, 381 S.W.3d 468, 476 (Tex. 2012)). The court of appeals erred by allowing Matzen's takings claim to proceed under an unpleaded theory. Like the due-process claims, the takings claims must be dismissed.

## B. Matzen's Petition

Having concluded that both of the claims authorized by the court of appeals must be dismissed, we turn to Matzen's petition for review. Matzen appeals the court of appeals' unanimous dismissal of most of his claims. His core contention is that he should not have to pay for his treatment. He seeks to reach that result using a variety of legal theories. His primary argument, which cuts across all his claims, is that the TCCO Board lacked authority to adopt the regulations TCCO now enforces against him. As explained above, that argument fails. *Supra* at ___. As a result, most of Matzen's petition to this Court fails as well.

Matzen's remaining claims fall into three categories. First, he contends that changing his commitment order from an outpatient-treatment order to a total-confinement order deprived him of vested

20

rights in violation of the Texas Constitution's promise that "[n]o . . . retroactive law . . . shall be made." TEX. CONST. art. I, § 16. This claim fails primarily because the new statutory requirements were imposed on Matzen *prospectively* following a hearing, not retroactively. Moreover, "[a] law that does not upset a person's settled expectations in reasonable reliance upon the law is not unconstitutionally retroactive." *In re A.V.,* 113 S.W.3d 355, 361 (Tex. 2003). Matzen cannot plausibly argue that he had a settled expectation that his rights under the original commitment order would not change. The original order itself says it could be modified with notice and a hearing.[14] The SVP Act likewise provides that commitment orders may be modified at any time upon notice and hearing. TEX. HEALTH & SAFETY CODE § 841.082(e). This provision has been in effect since long before Matzen's original commitment.[15] In addition, Matzen's commitment has always been subject to a statutorily mandated biennial review, at which his commitment order may be modified. *Id.* § 841.102.

Because both the SVP Act and Matzen's commitment orders informed him that his order could be amended, he never had a

---

[14] The order stated:

> **ORDERED** that a biennial review shall be conducted, in accordance with Texas Health and Safety Code § 841.102, on or about January 15, 2016. If the Court determines at the biennial review that a requirement imposed should be modified, or that there is probable cause to believe that GERARD NEIL MATZEN is no longer likely to engage in a predatory act of sexual violence, notice will [be] given and a hearing upon written motion.

[15] *See* Act of May 30, 2003, 78th Leg., R.S., ch. 347, § 24, 2003 Tex. Gen. Laws 1505, 1517.

reasonable expectation that the terms of his commitment were forever fixed. We discern no basis in the law for Matzen's contention that the terms of his commitment were "vested" at the time of the original order such that they cannot be altered without running afoul of the constitution. We agree with the existing court of appeals decisions rejecting such an argument.[16] Matzen and other similarly situated SVPs were not subjected to an unconstitutionally retroactive law when their commitment orders were prospectively amended as required by changes to the SVP Act.[17]

Second, Matzen argues in this Court that his commitment must be subjected to "strict scrutiny." He contends that the State's infringement of his "fundamental liberty interests" must be "narrowly tailored to serve a compelling state interest." Even giving his voluminous pleadings a liberal construction, *see City of Ingleside v. City of Corpus Christi*, 469 S.W.3d 589, 590 (Tex. 2015), Matzen did not assert this claim in the district court. He had four chances to plead such a claim, but he did not. Because this claim was not pleaded or argued below, it cannot be considered on appeal as a basis for denial of the plea

---

[16] *In re Commitment of May*, 500 S.W.3d 515, 524–26 (Tex. App.—Beaumont 2016, pet. denied); *In re Commitment of Cortez*, 405 S.W.3d 929, 935–36 (Tex. App.—Beaumont 2013, no pet.).

[17] Matzen contends that the terms of his commitment could not be modified because the final judgment in the first commitment proceeding stated: "All relief not granted is denied." This language did not negate the provisions of the SVP Act requiring later amendment, and the commitment order stated elsewhere that its terms could be modified. The quoted language is not a protection against amendments to Matzen's order. It is a routine clause frequently used to indicate the finality of a judgment. *See In re R.R.K.*, 590 S.W.3d 535, 541 (Tex. 2019).

to the jurisdiction. Even "a liberal construction does not require a court to read into a petition what is plainly not there." *Bos v. Smith*, 556 S.W.3d 293, 306 (Tex. 2018) (internal quotation marks omitted).

Finally, Matzen alleges TCCO has an "unwritten rule" under which it can deny him the ability to advance in treatment should he fail to pay for his expenses. His live petition claims this rule is invalid because it creates a "debtor's prison" in violation of a federal statute and the Texas Constitution. The court of appeals correctly ruled that Matzen's "debtor's prison" claim was abandoned on appeal because it was not briefed in the court of appeals. 604 S.W.3d at 107 n.3. Matzen likewise does not complain of a "debtor's prison" in this Court. He does, in this Court, attack TCCO's "unwritten rules" on other grounds, none of which were pleaded or argued below. Because these issues were not presented to the courts below, we do not address them. *See In re L.G.*, 596 S.W.3d 778, 779 n.1 (Tex. 2020).

### III. Conclusion and Disposition

All Matzen's claims against the State fail as a matter of law. Matzen pleaded no viable claim affirmatively demonstrating a waiver of, or exception to, sovereign immunity. Nor did he plead a viable ultra vires claim against state officials. The State's plea to the jurisdiction should have been granted in full.

Matzen has already repleaded three times, and his briefing in this Court advances no viable theories of liability. Matzen does not request a remand for repleading. Even if he had made such a request, we would

23

deny it because he has already been permitted to amend his petition to no avail.[18]

The judgment of the court of appeals is affirmed in part and reversed in part, and judgment is rendered dismissing all Matzen's claims against TCCO and McLane. Matzen's claims against Correct Care are not part of this interlocutory appeal.

_____
James D. Blacklock
Justice

**OPINION DELIVERED:** December 17, 2021

---

[18] *See, e.g.*, *Clint Indep. Sch. Dist. v. Marquez*, 487 S.W.3d 538, 558–59 (Tex. 2016) (dismissing claim rather than remanding, in part because plaintiffs "had an opportunity to, and did in fact, amend their pleadings in the trial court after the district filed its plea to the jurisdiction"); *Tex. Dep't of Crim. Just.– Cmty. Just. Assistance Div. v. Campos*, 384 S.W.3d 810, 815 (Tex. 2012) ("[I]f a governmental entity has asserted in the trial court that it is immune and a plaintiff fails to allege or show facts demonstrating a waiver of immunity after having a reasonable opportunity to conduct discovery directed to the issue and amend the pleadings, then the case should be dismissed."); *Harris Cnty. v. Sykes*, 136 S.W.3d 635, 639 (Tex. 2004) ("If a plaintiff has been provided a reasonable opportunity to amend after a governmental entity files its plea to the jurisdiction, and the plaintiff's amended pleading still does not allege facts that would constitute a waiver of immunity, then the trial court should dismiss the plaintiff's action.").